**PENNSYLVANIA COAL ASSOCIATION,**
Petitioner,

v.

**ENVIRONMENTAL HEARING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1994.

Decided Jan. 10, 1995.

Henry Ingram, for petitioner.

Amy L. Putnam, Deputy Gen. Counsel, for respondent.

Before COLINS, President Judge, and NEWMAN, J., and SILVESTRI, Senior Judge.

COLINS, President Judge.

Pennsylvania Coal Association (Pa. Coal) petitions for review of a February 22, 1994 order of the Commonwealth of Pennsylvania, Office of General Counsel (Commonwealth)

denying Pa. Coal's request under what is commonly known as Pennsylvania's Right-to-Know Act (Act)[1] to inspect documents in possession of the Environmental Hearing Board (EHB or Board). We affirm.

In a letter dated February 7, 1994, Pa. Coal requested a copy of a draft adjudication prepared by former Board member Edward Gerjuoy in the case of *Martin L. Bearer t/d/b/a/ North Cambria Fuel Company v. Department of Environmental Resources,* EHB Docket No. 93–091–G. Gerjuoy was the board member assigned to hear and handle the North Cambria Fuel Company case, and upon the Board's request, he prepared a draft adjudication in that case for use by the EHB in rendering its final decision. The request was referred to the Office of General Counsel, which responded by declaring that the draft adjudication was not within the Act's definition of public record.

■ The single issue before us is whether the draft adjudication prepared by the hearing examiner prior to the Board's final adjudication is a public record within the meaning of the Act. In its petition for review, Pa. Coal essentially asserts that the draft adjudication was prepared at the Board's request and that it was essential to the Board's ultimate decision. Our scope of review under the Act is limited to determining whether the agency's denial of the petitioner's request was for just and proper cause. *City of Chester v. Getek,* 132 Pa.Commonwealth Ct. 394, 572 A.2d 1319 (1990).

■ Section 66.1 of the Act defines public record, in pertinent part, as "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." 65 P.S. § 66.1(2). The person asserting a right to disclosure of information under that definition must establish that the information meets four conditions: 1) that it was generated by an agency; 2) that it is a minute, order, or decision of an agency, or that it was essential to the making of a decision; 3) that it fixes some personal or property right or duty; and 4) that the information is not shielded from disclosure by statute or judicial order. *Nittany Printing v. Centre County,* 156 Pa.Commonwealth Ct. 404, 627 A.2d 301 (1993).

■ In this case, the requested information does not affect personal or property rights or duties. First, a draft adjudication is not required in every case; the Board's regulations require a draft only when the hearing examiner is not a member of the Board. 25 Pa.Code § 21.86(a). Second, a draft adjudication at most reflects the determination of one person, who in most instances is not a Board member. The draft is in no manner an adjudication (despite its misnomer) regardless of the identity of its author and certainly cannot be equated with the final decision of the entire body. Even if a draft were to form the basis for the final adjudication, the draft does not independently affect any person's rights or duties.[2]

Because Pa. Coal failed to meet its burden of proving that the draft fixes personal or property rights or duties, we conclude that the Commonwealth had just and proper cause for its denial of Pa. Coal's request. Accordingly, the Commonwealth's determination is affirmed.

### *ORDER*

AND NOW, this 10th day of January, 1995, the determination of the Office of General Counsel in the above-captioned matter is affirmed.

---

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

2. *Compare Patients of Philadelphia State Hospital v. Department of Public Welfare,* 53 Pa.Commonwealth Ct. 126, 417 A.2d 805 (1980) wherein Welfare was required to base its approval of a hospital on an accreditation commission's evaluation report; however, if the evaluation report was negative, Welfare was precluded from issuing its approval.