SAFETY, AGRICULTURE, VILLAGES AND ENVIRONMENT (S.A.V.E.), INC., Densey C. Juvonen, and Rikki R. Morley Saunders, Petitioners,

v.

### The DELAWARE VALLEY RE-GIONAL PLANNING COM-MISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2002.
Decided March 31, 2003.

Douglas W. Frankenthaler, Cherry Hill, NJ, for petitioners.

Michael S. Burg and Christine M. Kovan, Wayne, for respondent.

Before COLINS, President Judge, COHN, J., MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI, JR.

Safety, Agriculture, Villages and Environment (S.A.V.E.), Inc. and its officers, Densey C. Juvonen and Rikki R. Morley Saunders, (collectively, SAVE), appeal from the decision of the Delaware Valley Regional Planning Commission (Commission) denying SAVE's request for disclosure of certain documents under the Act of June 21, 1957, P.L. 390, *as amended,* commonly known as the Right–to–Know Act, 65 P.S. §§ 66.1—66.4. On appeal, SAVE raises the following issues: (1) whether the Commission is "an agency" under the Right–to–Know Act; (2) whether the documents requested by SAVE constitute "public records" subject to the disclosure requirement of the Right–to–Know Act;

and (3) whether the Commission's denial of SAVE's request was for just and proper cause. In addition, this Court, *sua sponte,* has raised the issue of this Court's jurisdiction over SAVE's appeal. We affirm.

## I.

The Commission was created in 1965 by the Delaware Valley Urban Area Compact (Compact), Act of June 30, 1965, P.L. 153, *as amended,* 73 P.S. § 701, entered into among the Commonwealth of Pennsylvania, the State of New Jersey and the following counties in the "Delaware Valley Urban Area": Counties of Bucks, Chester, Delaware and Montgomery and the City of Philadelphia in Pennsylvania; and the Counties of Burlington, Camden, Gloucester and Mercer in New Jersey. Article I, Section 2 of the Compact. The purposes of the Compact are "to organize and conduct a continuing, comprehensive, coordinated regional planning program for the area, including ... transportation planning for the interests and purposes ... of the agencies of Pennsylvania and New Jersey ... as well as for the purposes of the local governments and their planning agencies." Article I, Section 3. The Commission is "a metropolitan planning organization" under 23 U.S.C. § 134 responsible for developing transportation improvement proposals to assist the signatory parties in qualifying for federal highway funds.

SAVE is a citizens' group in Chester County that are concerned with the impact of the proposed highway improvement project along the ten-mile stretch of the Pennsylvania State Highway 41 (PA 41 Project) on the environment and agriculture. The PA 41 traverses Chester County from the Chester–Lancaster County line on the north to the Pennsylvania–Delaware State line on the south.

On February 12, 2002, SAVE submitted to the Commission a request for disclosure of the following documents related to the proposed PA 41 Project pursuant to the Right–to–Know Act: traffic flow, volume and projection model(s) and training manuals; population and employment projection model(s) and training manual(s); all underlying data and assumptions used as input into the models; the data for the land use study for the PA 41 corridor; the truck surveys and raw data; the mass transit analysis; the documents, analysis and/or modeling of freight traffic; the September 2001 revised traffic modeling data; any other traffic modeling data; the underlying data, models assumption or basis for determining fifteen new major developments in the PA 41 corridor; the accident data and reports for the PA 41; any other documents, analysis and/or modeling concerning the Delaware State Road 41 and the Pennsylvania Route 30 project in Lancaster County; the accident rate analysis along the PA 41 following improvement construction; and any other documents related to the PA 41. In a letter dated March 22, 2002, the Commission denied SAVE's request. SAVE then appealed the Commission's decision to this Court pursuant to Section 4 of the Right–to–Know Act, 65 P.S. § 66.4.

## II.

Before addressing the merits of SAVE's appeal from the Commission's decision, we must consider this Court's jurisdiction to hear the appeal.[1]

Section 763(a)(1) of the Judicial Code, *as amended,* 42 Pa.C.S. § 763(a)(1), grants the Commonwealth Court exclusive jurisdiction over:

---

**1.** In the order dated September 23, 2002, this Court *sua sponte* raised the issue of this Court's jurisdiction over SAVE's appeal under Section 763 of the Judicial Code, *as amended,* 42 Pa.C.S. § 763, and directed the parties to file supplemental briefs to discuss that issue.

All appeals from *Commonwealth agencies* under Subchapter A of Chapter 7 of Title 2 [2 Pa.C.S. §§ 701–704] (relating to judicial review of Commonwealth agency action) or otherwise and including appeals from the Board of Claims, the Environmental Hearing Board, the Pennsylvania Public Utility Commission, the Unemployment Compensation Board of Review and from any other *Commonwealth agency* having Statewide jurisdiction. (Emphasis added.)

Section 933(a)(2) of the Judicial Code, *as amended,* 42 Pa.C.S. § 933(a)(2), on the other hand, grants each court of common pleas jurisdiction over "[a]ppeals from government agencies, *except Commonwealth agencies . . . .*" (Emphasis added.)

The term "a Commonwealth agency" is defined as "[a]ny executive agency or independent agency." Section 102 of the Judicial Code, *as amended,* 42 Pa.C.S. § 102. "Executive agencies" are "[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government," not including "any court or other officer or agency of the unified judicial system, the General Assembly and its officers and agencies, or any independent agency." *Id.* "Independent agencies" are in turn defined as "[b]oards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor . . . ." *Id.*

 Under Article II, Section 1 of the Compact, the Commission is "a body politic and corporate . . . as an agency and instrumentality of the governments of the respective signatory parties." However, such description of an organization in an enabling statute alone is not determinative of whether the organization is a Commonwealth agency or a local agency under the Judicial Code. *See, e.g., Delaware River Port Authority of Pennsylvania & New Jersey v. Board of Arbitration of Claims,* 45 Pa.Cmwlth. 281, 405 A.2d 600 (1979) (despite the description of the Port Authority in the charter as "a public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey," the Port Authority is not "the Commonwealth government" for the purpose of determining original jurisdiction of this Court under the statute then in effect). In addition, an entity may be treated as a local agency for one purpose and a Commonwealth agency for another depending on the issue involved. For example, the Southeastern Pennsylvania Transportation Authority is a local agency on the issue of jurisdiction of the court, and an agency of the Commonwealth on the issue of sovereign immunity. *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 517 A.2d 1270 (1986); *Fraternal Order of Transit Police v. Southeastern Pennsylvania Transportation Authority,* 668 A.2d 270 (Pa.Cmwlth.1995).

 Consequently, we must examine the Commission's organizational structure, purposes, powers, duties and fiscal affairs under its enabling statute to determine whether the Commission is a Commonwealth agency or a local agency for the purpose of appellate jurisdiction of this Court under the Judicial Code. *Yancoskie v. Delaware River Port Authority,* 478 Pa. 396, 387 A.2d 41 (1978). We should also keep in mind that the financial relationship between the Commonwealth and the agency in question is a primary factor in determining whether the agency is a Commonwealth agency for the purpose of jurisdiction of this Court. *Pennsylvania Housing Finance Agency v. Abreen Corp.,* 84 Pa.Cmwlth. 571, 480 A.2d 335 (1982).

The Commission consists of the Secretary of Transportation of Pennsylvania; the Commissioner of Transportation of New Jersey; the Executive Director of

Pennsylvania State Planning Board; the New Jersey Commissioner of Community Affairs; an appointee of the Governor of Pennsylvania; an appointee of the Governor of New Jersey; two legislative members each from Pennsylvania and New Jersey; a representative from each of the four Pennsylvania counties and four New Jersey counties in the Delaware Valley Urban Area; and one representative each from the Cities of Philadelphia, Chester, Camden and Trenton. Article II, Section 1 of the Compact. The Commission's actions require a majority vote of each state's representatives who are present at a meeting. Article II, Section 4.

The Commission provides regional transportation planning services for the Department of Transportation and the Pennsylvania State Planning Board and the New Jersey counterparts to assist them in meeting the qualifications for obtaining the federal highway funds. Article III, Section 2. The Commission has broad powers to adopt bylaws, rules and regulations, make personnel decisions, enter into contracts necessary for its operation, and "do any and all things necessary, convenient or incidental within the scope of its corporate purposes." Article III, Section 1. The duration of the Compact is perpetual unless either of the signatory parties terminates it by legislation. Article II, Section 1.

In *Levine v. Redevelopment Authority of the City of New Castle*, 17 Pa.Cmwlth. 382, 333 A.2d 190 (1975), this Court concluded that the Redevelopment Authority created by the City of New Castle pursuant to Section 4 of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. § 1704, was not "an agency of the Commonwealth" under the statute then in effect for the purpose of determining jurisdiction of this Court over the appeal from the Authority's denial of the request for disclosure of certain information under the Right–to–Know Act. The Court reasoned:

[T]o reach any other conclusion would lead to the absurd and unreasonable result that a citizen would be required to pursue his right to gain access to information in Harrisburg even though the records were located in the community and the agency involved had been created by an individual city or county and the issues involved were matters strictly within the concern of a particular locality rather than a concern of the Commonwealth generally. The General Assembly, of course, could not have intended such a result.

*Id.* at 192.

Unlike the Redevelopment Authority in *Levine* created to serve a single municipality, the Delaware Valley Urban Area encompasses five most populous counties in Pennsylvania and hundreds of municipalities. Moreover, the state officials, including the Secretary of Transportation, the Director of Pennsylvania Planning Board, an appointee of the Governor and two legislative members, serve as the Commissioners representing Pennsylvania. Unlike *Levine*, the Commission also serves the state's interests, not just the regional interests, by providing assistance to the state agencies in meeting the state's eligibility for the federal funds.

In addition, the Commission is granted sovereign immunity from liability in its transactions within Pennsylvania pursuant to Article VI, Section 1 of the Compact, which provides:

The commission, *as an instrumentality of the Commonwealth of Pennsylvania* and the State of New Jersey exercising a governmental function may not be sued in any court of law or equity and shall be vested with such attribute of *sovereign immunity* in its transactions *within the boundaries of one or the other of the two states* as shall apply to the

respective highway and/or transportation departments thereof and no more. If the commission is liable in one state and would not have been in another state, the state wherein such liability exists shall be solely obligated to discharge such liability ..., notwithstanding any other provisions of this agreement. (Emphasis added.)

Finally, the Commission's operation depends largely on the state funding. The Commission's operating funds are apportioned to each state based on the population of the Delaware Valley Urban Area in each state. Article IV, Section 2 of the Compact. The Commonwealth pays part of the Commission's entire operating funds and all of the direct expenses related to any mass transportation demonstration project located within the Commonwealth. *Id.* In addition, the Commission's fiscal affairs are subject to annual audits by the Auditor General of Pennsylvania. *Id.* The Commission thus has a close financial relationship with the Commonwealth.

In this respect, the Commission is distinguishable from the Delaware River Port Authority in *Yancoskie* and the Pennsylvania Housing Finance Agency in *Abreen,* which raised the revenues by bonds, notes, tolls and other charges, not from the state. Based on those agencies' financial independence from the Commonwealth, the Courts held that the Delaware River Port Authority was not an integral part of the Commonwealth but a political subdivision and was therefore not immune from suit in trespass, and that the Pennsylvania Housing Finance Agency was not "the Commonwealth" for the purpose of determining jurisdiction of the Board of Claims or original jurisdiction of this Court. Unlike those agencies, the Commission relies heavily on the funding from the Commonwealth.

Our review of the Compact thus demonstrates the legislative intent to create the Commission as an integral part of the Commonwealth. The Commission, however, does not fall within the definition of "an executive agency" under Section 102 of the Judicial Code because the Commission is not subject to the direct policy supervision or control of the Governor. The Commissioners include not only the Governor's appointees but also the two legislative members and the representatives from the participating counties and the cities. The Commission makes its own bylaws, rules and regulations and makes its own personnel decisions. The Commission is therefore "an independent agency."[2] Hence, the Commission falls within the definition of a Commonwealth agency, and this Court has jurisdiction over SAVE's appeal under Section 763(a)(1) of the Judicial Code.[3]

---

2. In the supplemental briefs, both SAVE and the Commission agree that the Commission falls within the definition of "an independent agency" and that this Court, therefore, has jurisdiction to hear this appeal.

3. In the September 23, 2002 order, this Court also directed the parties to address, in the supplemental briefs, the applicability of the Administrative Agency Law (Law), 2 Pa.C.S. §§ 501–508, 701–704, to the Commission proceedings. The Law is applicable to "all Commonwealth agencies." Section 501(a) of the Law, 2 Pa.C.S. § 501(a). The term "a Commonwealth agency" is defined as "[a]ny executive agency or independent agency." 2 Pa. C.S. § 101. Because the Commission is a Commonwealth agency, the proceedings before the Commission are subject to the Law. Section 504 of the Law, 2 Pa.C.S. § 504, provides: "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings." The Commission's March 22, 2002 denial letter amounts to an informal adjudication under the Law. *LaValle v. Office of General Counsel of the Commonwealth,* 564 Pa. 482, 769 A.2d 449 (2001).

## III.

Having concluded that this Court has jurisdiction over SAVE's appeal, we now turn to SAVE's challenge to the Commission's denial of its request for disclosure under the Right–to–Know Act (Act).[4]

 The purpose of the Act is to assure the availability of government information to citizens of this Commonwealth. *Arduino v. Borough of Dunmore,* 720 A.2d 827 (Pa.Cmwlth.1998), *appeal dismissed,* 559 Pa. 415, 741 A.2d 195 (1999). Section 2 of the Act, 65 P.S. § 66.2, provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." A party asserting a right to disclosure of documents must establish that the requested documents were generated by "an agency" and constitute "public records" under the Act. *Nittany Printing & Publishing Co. v. Centre County Board of Commissioners,* 156 Pa.Cmwlth. 404, 627 A.2d 301 (1993).[5]

 Our conclusion that the Commission is "a Commonwealth agency" under Section 763(a)(1) of the Judicial Code for the purpose of jurisdiction of this Court is not determinative of whether the Commission is "an agency" under the Act. The Act defines "an agency" as:

Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority *or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has its purpose the performance of an essential governmental function.*

Section 1(1) of the Act, 65 P.S. § 66.1(1) (emphasis added). An organization performs an essential governmental function only where (1) the statute identifies the organization as providing essential services, or (2) the organization provides constitutionally mandated services or services indisputably necessary to the continued existence of the Commonwealth. *Community College of Philadelphia v. Brown,* 544 Pa. 31, 674 A.2d 670 (1996).

Article III, Section 2 of the Compact provides that the Commission's functions and duties are "to make a master plan and such survey and studies as may be essential hereto for the physical development of the area and submit said plan to the participating governmental bodies." The Commission provides assistance to the Department of Transportation in order that the Commonwealth may qualify for all fed-

---

In the supplemental brief, SAVE argues that the Commission failed to comply with the Law because it did not give SAVE any notice or explanation of the reason for the denial. However, SAVE never raised the issue either in the petition for review or in the initially filed brief. Where, as here, a party failed to raise the issue of the sufficiency of the explanation of the denial or the adequacy of the record, the issue is waived. *LaValle.* Moreover, the Commission adequately explained the reasons for the denial of SAVE's request, i.e., no obligation to disclose the requested documents under the Act; and ample opportunities for SAVE to meaningfully participate in the decision-making process by reviewing the Draft Environmental Impact Statement

being prepared by the Department of Transportation and at subsequent public hearings on the proposed PA 41 Project.

**4.** The Act was substantially amended on June 29, 2002 to be effective in 180 days. The amendment is, however, inapplicable to this proceeding because SAVE's request for disclosure was made and denied before the effective date of the amendment.

**5.** This Court's review is limited to determining whether the agency's decision to grant or deny the request for information was for just and proper cause. Section 4 of the Act, 65 P.S. § 66.4; *Arduino.*

eral funds available for the construction of highway facilities. *Id.* Under the Compact, however, the Commission acts only in an advisory capacity and does not have authority to make ultimate decisions on any proposed projects: "The Commission shall serve as an advisory agency, with actual authority for carrying out planning proposals continuing to rest in the governing bodies of the states and counties." *Id.*[6] Because the Commission performs its duties only in an advisory capacity under its enabling statute, it cannot be considered an organization performing "essential" services.

Further, while the Commission provides important planning services to the Commonwealth and the participating counties, those services are neither constitutionally mandated nor necessary for the survival of the Commonwealth. *See Brown* (although the Community College of Philadelphia performs important educational services, it is not an agency under the Act because the survival of the Commonwealth would not be in jeopardy in the absence of such services).

Therefore, the Commission is not an organization performing an essential governmental function to qualify as "an agency" subject to the disclosure requirement of the Act.

Moreover, the requested documents are not "public records" under the Act. A "public record" is defined as (1) "[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property"; and (2) "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obli-

gations of any person or group of persons" Section 1(2) of the Act, 65 P.S. § 66.1(2).

SAVE's contention that the requested documents, consisting of the various raw data, models, traffic and population projections, surveys, studies, analysis and accident analysis, fall within the second category of "public records" is without merit. The second category of public records is narrower than the first category. *North Hills News Record v. Township of McCandless,* 555 Pa. 51, 722 A.2d 1037 (1999). To fall within the second category of "public records," the information sought must be, *inter alia,* an essential component of the agency's decision. *Pennsylvania Coal Ass'n v. Environmental Hearing Board,* 654 A.2d 122 (Pa.Cmwlth.1995). A mere allegation that the information may possibly have some impact or influence on the agency's decision is not sufficient to establish that the information is an essential component of the agency's decision; the document must be either the basis for or a condition precedent of the decision. *Arduino; Cypress Media, Inc. v. Hazleton Area School District,* 708 A.2d 866 (Pa. Cmwlth.1998), *appeal dismissed,* 555 Pa. 340, 724 A.2d 347 (1999).

In this matter, the fact that the requested documents gathered by the Commission may be later used by the state agencies and possibly have some impact on their ultimate decisions regarding the proposed PA 41 Project is insufficient to establish that those documents are an essential component of a decision fixing rights, duties and obligations. Until the state agencies make ultimate decisions on the proposed project, those documents cannot be considered public records. *See Aronson v. Pennsylvania Department of Labor & Industry,* 693 A.2d 262 (Pa.Cmwlth.1997)

---

6. The federal statute also provides that "[t]he authorization of the appropriation of Federal funds or their availability for expenditure ... shall in no way infringe on the sovereign rights of the States to determine which project shall be federally financed." 23 U.S.C. § 145(a).

(the raw data obtained in the wage survey were not considered public records until the Secretary's actual decision on the prevailing wage); *Aamodt v. Department of Health,* 94 Pa.Cmwlth. 54, 502 A.2d 776 (1986) (the mere surveys of the effects of nuclear exposure on pregnancy were not public records).

Because the Commission is not an agency under the Act and because the requested documents are not public records, the Commission's denial of SAVE's request for disclosure of the documents was for just and proper cause.

Accordingly, the decision of the Commission is affirmed.

President Judge COLINS dissents.

### ORDER

AND NOW, this 31st day of March, 2003, the decision of the Delaware Valley Regional Planning Commission in the above-captioned matter is affirmed.