# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dave Bohman and WNEP-TV      :
      :
      :
      :
      v.      :    No. 1238 C.D. 2017
      :    Argued: December 11, 2018
Clinton Township Volunteer      :
Fire Company,      :
      Appellant    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER          FILED: May 8, 2019

      Clinton Township Volunteer Fire Company (Fire Company) appeals from an Order of the Court of Common Pleas of Lycoming County (trial court), dated August 9, 2017, which affirmed an Office of Open Records' (OOR) Final Determination that concluded Fire Company was a local agency subject to the Right-to-Know Law (RTKL).[2] Consistent with our recent decision in *Pysher v. Clinton Township Volunteer Fire Company*, __ A.3d __, (Pa. Cmwlth., No. 1237 C.D. 2017, filed May 8, 2019), we vacate the trial court's Order and remand for development of the factual record.[3]

---

[1] This case was reassigned to the authoring judge on February 27, 2019.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[3] This case was argued seriately with *Pysher*.

On February 21, 2017, Dave Bohman and WNEP-TV (Requesters) submitted a letter to Fire Company, requesting various documents under the RTKL.[4] (Reproduced Record (R.R.) at 1.) Fire Company's Solicitor advised Requesters by letter dated March 1, 2017, that Fire Company would not be responding to the request because Fire Company was not a local agency subject to the RTKL. (*Id.* at 8.) Requesters filed a timely appeal to OOR, which invited the parties to supplement the record. According to OOR's Final Determination, Requesters submitted a position statement and sworn affidavit from Todd Pysher,[5] who is a resident and taxpayer of Clinton Township (Township), in which he "detail[ed] the process by which . . . Fire Company receives support from the Township," as well as "information from . . . Fire Company's website regarding the municipal fire tax . . . [and] Fire Company's tax reports for the years 2011-2016." (Final Determination at 2.) Fire Company also submitted a position statement wherein it reiterated it was not a local agency.[6] No hearing was held or requested.

On April 10, 2017, OOR issued its Final Determination, granting Requesters' appeal and directing Fire Company to provide all documents responsive to the

---

[4] In particular, Requesters sought:

1- Copies of all loans from [Fire Company] to Todd Winder from 2010 to present including terms, interest, repayment, and collateral.
2- Minutes of [Fire Company] meetings where loans to Todd Winder from 2010 to present were approved, including roll call votes.
3- Minutes of [Fire Company] meetings where loans to Todd Winder from 2010 to present were forgiven, including roll call votes.

(Reproduced Record (R.R.) at 1.)

[5] Mr. Pysher was the requester and respondent in *Pysher*.

[6] Neither Requester's position statement with supporting documents nor Fire Company's position statement are part of the trial court's original record.

request within 30 days. OOR stated the sole issue before it was whether Fire Company was a local agency, such that it would be subject to the RTKL. (*Id.* at 4.) In its Final Determination, OOR acknowledged that some courts of common pleas have held volunteer fire companies are local agencies for purposes of the RTKL, whereas other courts of common pleas have not. OOR stated that it also "consider[ed] case law finding firefighting to be a governmental activity" and volunteer fire companies being considered government agencies under other statutes. (*Id.*) Accordingly, OOR found Fire Company was a local agency and because it did not meet its burden of proving that the requested records were exempt from disclosure, ordered Fire Company to provide all responsive documents within 30 days.

Fire Company filed a timely petition for review with the trial court, which took no additional evidence. On August 9, 2017, the trial court denied Fire Company's petition, affirmed OOR's Final Determination, and directed Fire Company to provide all responsive documents within 30 days for the same reasons it stated in *Pysher*. Fire Company now appeals to this Court.

On appeal,[7] Fire Company argues it is a private, nonprofit corporation that does not perform a government function. It compares itself to any other contractor that enters into a contract with a municipality to provide a service. Fire Company acknowledges that it is entitled to immunity under the act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act),[8] but claims immunity does not equate to a conclusion that it is a local agency under the RTKL. Although

---

[7] Our review is "limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision." *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011).

[8] 42 Pa. C.S. §§ 8541-8542.

it receives some public funds, Fire Company argues this does not make it an agency or instrumentality of the Township. Fire Company argues if it was subject to the RTKL, it would have a chilling effect on membership. Finally, it asserts it already reports expenditures to the Township.[9] Fire Company asks this Court to reverse the trial court's Order and hold volunteer fire companies, such as itself, are not local agencies subject to the RTKL.

As we explained in *Pysher*, in order to determine whether Fire Company is a local agency under the RTKL, a number of factors should be considered, including the degree of governmental control, the nature of the organization's functions, and financial control. *Pysher*, __ A.3d at __, slip op. at 12 (citing *In re Right to Know Law Request Served on Venango County's Tourism Promotion Agency and Lead Economic Development Agency*, 83 A.3d 1101, 1108 (Pa. Cmwlth. 2014)). Here, like *Pysher*, there are no facts of record that we can review. While OOR's Final Determination eludes to an affidavit and other documents purporting to show at least some financial relationship between Fire Company and Township, those documents were not made part of the record before the trial court. Moreover, the trial court took no additional evidence. Based on the record before this Court, and the arguments of the parties and amicus, we cannot consider those factors without a factual record.

Accordingly, we must vacate the trial court's Order and remand this matter for factual development of the record, as set forth in *Pysher*.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[9] Requesters did not file a brief. Monroeville Volunteer Fire Co. No. 5 (Monroeville VFC) sought to intervene in this matter but was denied by order dated March 12, 2018. It was, however, permitted to file a brief as amicus curiae. In its amicus brief, Monroeville VFC made the same arguments it made in *Pysher*, where it also filed an amicus brief.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dave Bohman and WNEP-TV     :
    :
    :
    :
         v.     :   No. 1238 C.D. 2017
    :
Clinton Township Volunteer     :
Fire Company,     :
         Appellant     :

# **O R D E R**

**NOW**, May 8, 2019, the Order of the Court of Common Pleas of Lycoming County, in the above-captioned matter, is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

_____

**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dave Bohman and WNEP-TV     :
                             :
       v.                :   No. 1238 C.D. 2017
                             :   ARGUED:  December 11, 2018
Clinton Township Volunteer     :
Fire Company,                :
               Appellant    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING
OPINION BY JUDGE CEISLER                     FILED:  May 8, 2019

While I concur with the Majority that a remand in this matter is required, I would remand for the *sole* purpose of determining whether the records requested constitute records as defined by the Right-to-Know Law (RTKL).[1]  Recognition of the critical role volunteer fire companies play in protecting life as well as preventing the destruction and devastation of property and land, as well as consideration of the historical and present relationship between volunteer fire companies and the municipalities they serve, mandates a conclusion that volunteer fire companies are local agencies under the RTKL.  As the Majority does not so conclude, I must respectfully dissent.

**Legislative and Judicial Treatment of Volunteer Fire Companies**

Our General Assembly has recognized the vital governmental function performed by volunteer fire companies through multiple legislative enactments.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.

Indeed, an entire chapter of the Emergency Management Services Code[2] is devoted to volunteer firefighters.[3]

A city, borough, or township may expend *public* funds to secure insurance or compensation for volunteer firefighters killed or injured while going to, returning from, or attending fires. 35 Pa.C.S. § 7403. An employer may not terminate a volunteer firefighter who misses work while responding to a fire call, or discriminate against an employee injured in the line of duty as a volunteer firefighter. 35 Pa.C.S. §§ 7423 – 7424. An employer violating these provisions shall pay the disciplined or terminated volunteer firefighter lost wages and benefits, as well as reasonable attorney fees incurred. 35 Pa.C.S. § 7427. A volunteer fire company may nominate any of its members as special fire police, who have full power to regulate traffic, control crowds, and exercise other police powers necessary to facilitate the work of the volunteer fire company at a fire or other event or emergency. 35 Pa.C.S. § 7435.

Also contained within the Emergency Management Services Code is a statutory scheme which encourages individuals to take part in the fire service as volunteer firefighters through the creation of a volunteer firefighters' relief association.[4] The purpose of such an association, which may receive funds from municipal corporations, is to provide financial assistance to volunteer firefighters, or the dependents of volunteer firefighters who lose their lives as a result of their firefighting activities. 35 Pa.C.S. § 7413. The volunteer firefighters' relief association may also receive funds under the Municipal Pension Plan Funding

---

[2] 35 Pa.C.S. §§ 7101 – 79a31.

[3] 35 Pa.C.S. §§ 7401 – 7437.

[4] 35 Pa.C.S. §§ 7411 – 7419.

Standard and Recovery Act[5] if a political subdivision has certified that the association is affiliated with the political subdivision's fire company. 35 Pa.C.S. § 7416(a).

Legislative enactments governing volunteer firefighters are not limited to the Emergency Management Services Code. Members of a volunteer fire company are employees for purposes of Section 601(a)(1) of the Workers' Compensation Act when injured in the course of performing firefighting duties as authorized by the municipality.[6] Various sections in the Borough Code,[7] The County Code,[8] The First Class Township Code,[9] and The Second Class Township Code[10] provide for the appropriation of public funds for the operation and maintenance of fire companies, including the construction, repair and maintenance of buildings for fire companies, and training of fire company personnel, and provide for the promulgation of rules and regulations for the government of fire companies. A volunteer fire company may receive financial assistance through the Fire Company Grant Program established at 35 Pa.C.S. § 7811. This program, which provides grants to improve and enhance the capabilities of a fire company to provide firefighting, ambulance,

---

[5] Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§ 895.101 – 895.1131. The purpose of the Municipal Pension Plan Funding Standard and Recovery Act is to strengthen municipal pension plans by requiring certain funding standards.

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1031(a)(1).

[7] *See* 8 Pa.C.S. § 1202(35).

[8] *See* Section 1951 of the Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1951.

[9] *See* Art. XV, § 1502 of the Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 56516.

[10] *See* Section 1803 of the Act of May 1, 1933, P.L. 103, *as amended*, added by the Act of November 9, 1995, P.L. 350, 53 P.S. § 66803.

and rescue services, is funded through an appropriation from the Commonwealth's General Fund. 35 Pa.C.S. § 7831. Section 1553(a) of The Second Class Township Code[11] imposes upon a township the responsibility to ensure fire and emergency medical services are provided.

As the majority opinion correctly notes, the mere funding of an institution does not render it an agency or instrumentality of the state. *Pa. State Univ. v. Derry Twp. Sch. Dist.*, 731 A.2d 1272, 1274 (Pa. 1999). However, the legislation described herein directs not only the different means by which a volunteer fire company may be funded, but permits the promulgation of regulations under which it is organized and operated, and provides various protections and benefits for its members.

Pennsylvania courts have recognized the importance of these legislative enactments when called upon to determine whether volunteer fire companies should be afforded governmental immunity. In *Zern v. Muldoon*, 516 A.2d 799, 801-802 (Pa. Cmwlth. 1986), this Court engaged in a lengthy recitation of the history of firefighting in the Commonwealth, from its origins in Philadelphia where homeowners were required to keep two leather buckets for the purpose of fighting a community fire, through 1855, when the city assumed total responsibility for fire prevention and control of volunteer fire companies. This Court recognized that while Philadelphia eventually established a permanent fully-funded fire department, volunteer fire companies maintained a strong presence throughout the rest of the Commonwealth. *Id.* at 802. The enactment of legislation which granted powers and benefits to firefighters, and created funding mechanisms for volunteer fire companies, demonstrated "an adoption by the Commonwealth and its citizenry of the governmental characteristic of volunteer fire companies." *Id.* at 805. Further,

___

[11] Added by the Act of March 17, 2008, P.L. 47, 53 P.S. § 66553(a).

volunteer fire departments, by virtue of their functions and accomplishments, had acquired a "public, *governmental* character." *Id.* (emphasis in original). Protection of the public from fire was a governmental duty "capably performed by mostly volunteer organizations." *Id.* This Court's determination that an entitlement to governmental immunity existed was a result of a volunteer fire company's "distinct creation and present relationship to municipalities."[12] *Id.*

Similarly, in *Wilson v. Dravosburg Volunteer Fire Department No. 1*, 516 A.2d 100 (Pa. Cmwlth. 1986), this Court reviewed the issue of whether a volunteer fire company was entitled to governmental immunity under the PSTCA. Section 8541 of the PSTCA establishes governmental immunity for local agencies. 42 Pa.C.S. § 8541. "Local agency" is defined in Section 8501 of the Judicial Code as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501.

In construing the term "local agency" to include volunteer fire companies as government units entitled to immunity, this Court recognized that volunteer fire companies, in the performance of public firefighting duties, exist as entities acting *on behalf of local government* units. *Wilson*, 516 A.2d at 102. While guided in part by definitions set forth in the Judicial Code, this Court was also persuaded by the historical, structural relationship existing between volunteer fire companies and the local municipalities and the citizenry they serve. *Id.* Although the Court stressed its

---

[12] While this Court determined that volunteer fire companies *presently* enjoyed governmental immunity, the critical facts in *Zern* occurred during the time after the Supreme Court abolished the immunity doctrine in *Ayala v. Philadelphia Board of Education*, 305 A.2d 877 (Pa. 1973), but before the General Assembly enacted what is commonly referred to as the Political Subdivision Tort Claims Act (PSTCA), 42 Pa.C.S. §§ 8541-8542. Accordingly, the Court was constrained to hold that the volunteer fire company involved in the underlying civil action did not have immunity from suit for acts which took place in the interim.

holding was limited to the immunity provisions of the PSTCA, we cannot on that basis disregard its fundamental conclusion that protection of the public from fire is an *essential* governmental duty.[13]

In *Harmony Volunteer Fire Co. and Relief Association v. Pennsylvania Human Relations Commission*, 459 A.2d 439 (Pa. Cmwlth 1983), this Court was tasked with determining whether a volunteer fire company was an "employer" for purposes of the Pennsylvania Human Relations Act.[14] Given the nature of the work performed by a fire company and the "pervasiveness of governmental involvement in the company's activities," this Court concluded a fire company's primary function, the provision of fire and emergency services, was governmental in nature. *Id.* at 442-43. The Court was guided in part by legislative enactments which created an "intimate relationship" between the two entities. *Id.*

In light of our prior decisions and their consideration of the historical and present relationship between volunteer fire companies and the municipalities they serve, as well as legislative enactments that assist with the governmental creation, training, and operation of volunteer fire companies, and which afford governmental protection for their members, I am compelled to conclude that the provision of firefighting services is a governmental duty. As the entity which performs this duty on behalf of Clinton Township, the Clinton Township Volunteer Fire Company (Fire Company) constitutes a local agency under the RTKL.

---

[13] *See also Guinn v. Alburtis Fire Co.*, 614 A.2d 218 (Pa. 1992) (volunteer fire companies entitled to governmental immunity even when not engaged in firefighting activities).

[14] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951 – 963.

## The Majority Opinion

The legislative provisions and court decisions included in this dissent are either dismissed or wholly ignored by the Majority. Rather, the Majority summarizes several decisions which review the issue of whether specific nonprofit organizations are considered local agencies under the RTKL. From this analysis, the Majority concludes that the original record in the present matter is devoid of facts which allow this Court to determine whether the Fire Company is a local agency under the RTKL. Majority, _ A.3d at _, slip op. at 1-2. Consequently, the Majority asserts that a remand is required to evaluate the degree of governmental and financial control Clinton Township exercises over the Fire Company and the nature of the Fire Company's functions. *Id.*, slip op. at 14-15. I believe the decisions relied upon by the Majority are readily distinguishable or inapplicable.

Curiously, the Majority leads not with a case interpreting the RTKL, but rather with *Derry Township*, in which our Supreme Court examined whether Penn State University (PSU) was a Commonwealth agency exempt from the payment of real estate taxes, as real estate owned by the Commonwealth cannot be subject to taxation by political subdivisions absent statutory authority. *Derry Twp.*, 731 A.2d at 1273. The pivotal issue in *Derry Township* was not the Court's interpretation of a statutory definition, but whether PSU's real property was so "thoroughly under the control of the Commonwealth, that, effectively, the institution's property functioned as Commonwealth property." *Derry Twp.*, 731 A.2d at 1274. The Supreme Court determined that where governmental representation on PSU's board of trustees was a minority interest, the authority to control and dispose of PSU's real property was not within the purview of the Commonwealth. *Id.* at 1275.

The Majority premises its reliance on *Derry Township* in the instant matter, on the Supreme Court's observation that "an entity's status as an agent or instrumentality varies, depending on the issue for which the determination is being made." *Derry Twp.*, 731 A.2d at 1274. The issue being determined in *Derry Township* was whether PSU was immune from the payment of real estate taxes, and not whether it constituted a local agency under the RTKL. Furthermore, *Derry Township* contained no analysis as to whether PSU performed a governmental function. As such, I am unconvinced of the persuasive value of *Derry Township* in the present matter.

The next decision cited by the Majority, *Safety, Agriculture, Villages and Environment (S.A.V.E.), Inc. v. The Delaware Valley Regional Planning Commission*, 819 A.2d 1235, 1242 (Pa. Cmwlth. 2003), is likewise distinguishable. The nonprofit at issue in *S.A.V.E.* was a commission created to facilitate a regional planning program for several counties in Pennsylvania and New Jersey. *Id.* at 1237. The petitioner, S.A.V.E., filed a request with the commission for disclosure of information related to a proposed highway improvement project. This Court reviewed the applicable provisions of what was commonly known as the Right-To-Know Law (Law),[15] which was repealed and replaced with the RTKL in 2008, to determine whether the commission was an agency subject to the disclosure requirements of the Law. *Id.* at 1241. The definition of agency at that time required the entity have as its purpose "the performance of an essential governmental function."[16] *Id.* This Court concluded that, while the commission provided

---

[15] Act of June 21, 1957, P.L. 390, *as amended*, formerly 65 P.S. §§ 66.1 – 66.9, *repealed by* Section 3102(2)(ii) of the Act of February 14, 2008, P.L. 6.

[16] 65 P.S. § 66.1.

important planning services to the Commonwealth and the participating counties, those services were not "necessary for the survival of the Commonwealth," and the commission did not perform an essential governmental function. *Id.* at 1242. Accordingly, the commission did not qualify as an "agency" subject to disclosure under the Law. *Id.*

Given that our decision in *S.A.V.E.* predates the current RTKL and involved an interpretation of a dissimilar statutory definition,[17] I question its relevance here. More importantly, unlike the commission in *S.A.V.E.*, it cannot be said that the essential governmental function performed by the Fire Company is unnecessary for the survival of the township it serves.

The next decision relied on by the Majority, *In re Right to Know Law Request Served on Venango County's Tourism Promotion Agency and Lead Economic Development Agency*, 83 A.3d 1101, 1109 (Pa. Cmwlth. 2014) (*Venango County*), involved a nonprofit corporation with the stated purpose of promoting economic development, recreation, and tourism. In reaching the conclusion that this entity was not a local agency under the RTKL, this Court considered the following factors: 1) What was the level of governmental authority imposed on the operations of the

---

[17] The Law did not contain a definition of "local agency." It defined only "agency" as follows:

> Any office, department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, the State System of Higher Education or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

*Former* 65 P.S. § 66.1.

nonprofit; 2) Whether the nonprofit performed a governmental function, and 3) Whether the nonprofit's receipt of public funds suggested a delegation of authority on the part of the local government. *Venango County*, 83 A.3d at 1108.

In applying those three factors to the facts of *Venango County*, this Court determined that Venango County's Tourism Promotion Agency and Lead Economic Development Agency was not a local agency because of the lack of evidence establishing government control over the nonprofit, the "proportionally small" amount of funding received by the nonprofit from government sources, and the fact that the nonprofit's functions did not fulfill a core purpose of a government agency. *Id.* at 1108-09. Importantly, this Court did not suggest equal weight must be given to each factor or even that all factors must be considered in future local agency analyses. Indeed, the *Venango County* Court recognized that the *function* an entity performs weighs heavily in a local agency assessment. *Id.* at 1109.

While *Venango County* is instructive, I believe the Majority's reliance upon that decision fails to acknowledge a critical difference between a nonprofit organization that promotes tourism and recreation and one that performs the essential governmental function of protecting lives and property from the ravages of fire.

Furthermore, of the three factors outlined in *Venango County*, one – fulfillment of a core purpose of a government agency – has been met presently by virtue of the fact that firefighting is an essential governmental duty. As to financial control, the *Venango County* Court was influenced by the fact that the financial assistance provided to the nonprofit by public funds "*did not equate to any local government delegation of authority,* and the public funds were *de minimis*." 83 A.3d at 1109 (emphasis added). Here, regardless of the degree to which the Fire Company

is funded by private or public funds, Clinton Township has unquestionably delegated to the Fire Company its authority to provide essential firefighting services under Section 1553(a) of The Second Class Township Code. As such, I believe the percentage of the Fire Company's budget represented by public funds is largely irrelevant. With regard to governmental control, I recognize that the original record filed with this Court is bereft of detail in that regard. However, as discussed herein, *Venango County* does not mandate that each factor discussed – governmental and financial control and the function performed by the nonprofit – be given equal weight in a local agency analysis, or even direct that all factors must be met before a nonprofit may be deemed a local agency. Presently, the critical governmental function performed by the Fire Company merits greater weight be given to that factor.

Finally, the Majority cites *Philadelphia Industrial Development Corporation v. Ali* (Pa. Cmwlth., No. 528 C.D. 2010, filed April 18, 2011) (*PIDC*), an unreported panel decision[18] that was relied upon by the *Venango County* Court. In *PIDC*, the issue was whether PIDC, a nonprofit created to promote economic development in Philadelphia, qualified as a local agency under the RTKL. Section 102 of the RTKL defines local agency as "[a]ny local, intergovernmental, regional or municipal agency, authority, council, board, commission or **similar governmental entity**." 65 P.S. § 67.102 (emphasis added). As with the present matter, this Court was tasked with interpreting the phrase "similar governmental entity." In *PIDC*, this Court applied the doctrine of *ejusdem generis* and construed the term "similar

---

[18] *PIDC* was filed pursuant to Section 256(b) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.256(b), **as one judge recused himself from consideration of the matter, and the votes of the remaining commissioned judges resulted in a tie 4-4 vote.**

governmental entity" in light of the terms preceding it – local, intergovernmental, regional or municipal agency, authority, council, board, and commission. *PIDC*, slip op. at 3. Relying on legislative enactments such as the Intergovernmental Cooperation Authority Act for Cities of the Second Class[19] and the Municipality Authorities Act[20] for guidance, this Court concluded generally that local, intergovernmental, regional or municipal agencies, authorities, councils, boards, and commissions were entities established by a political subdivision pursuant to statutory authorization. *Id.* at 4. PIDC did not constitute a "similar governmental entity," or a local agency under the RTKL, because it was not a political subdivision or an entity created by a political subdivision, its members were not appointed by the governing body of a political subdivision, it did not require a delegation of authority to fulfill its core purpose of promoting economic development, and it could not be disbanded by a political subdivision. *Id.*

*PIDC* is distinguishable from the present case, as no analysis was made by the *PIDC* Court relative to the functions performed by PIDC and whether those functions were governmental in nature. As discussed extensively herein, firefighting is an essential and critical governmental duty. Given the Fire Company's status as the entity which performs this duty, I conclude that it constitutes a governmental entity.

### Financial and Administrative Burdens

In an Amicus brief filed in support of the Fire Company, the Monroeville Volunteer Fire Company No. 5 (Amicus) argued that the administrative burden and

---

[19] Act of February 12, 2004, P.L. 73, *as amended*, 53 P.S. §§ 28101-28707.

[20] 53 Pa.C.S. §§ 5601-5623.

costs created by compliance with the RTKL would hamper the Fire Company's ability to fulfill its firefighting duties. **Ironically, the Majority's decision in fact creates, even exacerbates, just such a fiscal and administrative burden**. If the Majority's reasoning is accepted, going forward, every volunteer fire company faced with a RTKL request would undergo a time-consuming process wherein it would be required to present evidence related to its receipt of public and private funds, government control, and the nature of its functions. Furthermore, a volunteer fire company's status as a local agency could conceivably rise and fall on the source of its funding in a given year. Such a scheme, in which the Fire Company could rely primarily on public funds for one fiscal year and be subject to the RTKL, but have its status as a local agency rescinded in a subsequent year due to more successful private fundraising efforts, is simply unworkable. This would create inconsistencies throughout Pennsylvania regarding which volunteer fire company is a local agency and which is not, *despite the fact that the essential governmental function of each entity is the same.*

Similarly, the issue of whether a volunteer fire company's expenditures are subject to the RTKL cannot turn on the **source** of those funds. Ostensibly, **all** funds received by a volunteer fire company, regardless of origin, are required to support its primary and essential governmental function of protecting life as well as preventing destruction of land and property. As such, **any** disbursement of funds by a volunteer fire company should be subject to public scrutiny. A transaction of the type alleged in the present matter, where the Fire Company extended and subsequently forgave a personal loan to the fire chief, should not be protected from disclosure under the pretense it was made with private funds. Otherwise, a volunteer fire company could simply shield questionable transactions through the expenditure

of private, rather than public, funds. Such a lack of transparency into the workings of government is exactly what the RTKL was intended to prevent.

## Conclusion

The critical governmental function performed by volunteer fire companies merits a conclusion that such entities are local agencies subject to the RTKL. As such, I would affirm the order of the Court of Common Pleas of Lycoming County on that basis. However, whether the requested information constitutes public records is a preliminary, threshold issue that must be decided before reaching the question of whether an exemption or privilege applies. *Barkeyville Borough v. Stearns*, 35 A.3d 91, 94 (Pa. Cmwlth. 2012). "[A] requested piece of information must constitute a 'record' under the RTKL in order to constitute a 'public record' under the RTKL." *Office of the Governor v. Bari*, 20 A.3d 634, 640 (Pa. Cmwlth. 2011). The burden of proving that a requested piece of information is a public record lies with the requester. *Barkeyville*, 35 A.3d at 94. Absent from the record is any indication that Dave Bohman and WNEP-TV, the appellees in this matter, sustained their burden of proving the requested documents were public records. Accordingly, I would remand this matter to the Trial Court for the sole purpose of determining whether the records requested constituted records as defined by the RTKL.

_____
ELLEN CEISLER, Judge