**In re RIGHT TO KNOW LAW REQUEST SERVED ON VENANGO COUNTY'S TOURISM PROMOTION AGENCY AND LEAD ECONOMIC DEVELOPMENT AGENCY.**

**Appeal of: Michael R. Hadley.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2013.
Decided Jan. 3, 2014.

---

Michael R. Hadley, Oil City, for appellant.

Robert W. McFate, Seneca, for appellee Oil Region Alliance of Business Industry and Tourism.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

Michael Hadley (Requester) appeals from the Venango County Court of Common Pleas' (trial court) order that affirmed the Office of Open Records' (OOR) final determination holding the Oil Region Alliance of Business, Industry and Tourism (Alliance) is not a local agency subject to the Right–to–Know Law (RTKL).[1]

Requester contends the trial court erred in applying deferential review of OOR's determination. Requester also asserts the records of the Alliance are accessible under the RTKL regardless of its status as a private nonprofit corporation. Ultimately, Requester seeks a broad construction of the definition of "local agency." Upon review, we affirm the trial court, holding the Alliance is not a local agency as a matter of law, and that its records are not otherwise accessible under the RTKL through the underlying request.

## I. Background

The purpose of the Alliance is to promote economic development, recreation and tourism in Venango County and parts of Crawford County. The Alliance also owns real estate for the development of industrial parks, and it owns individual facilities for rent to industrial occupants. Representatives of the private sector comprise 21 of the 25 member governing board of the Alliance (Board). The Board sets policy and oversees the management team that directs day-to-day operations. The Alliance receives financing from its members as well as from grants by state and federal sources.

Requester submitted a request to the Alliance seeking employee names and salary information. The Alliance denied the request, responding that it is not an agency subject to the RTKL; rather, it is a private nonprofit corporation. Requester appealed the Alliance's denial to OOR. The Alliance's alleged status as a local agency implicates jurisdiction because OOR only adjudicates appeals from Commonwealth and local agency denials.

OOR reviewed the Articles of Incorporation, Bylaws and documents from the Internal Revenue Service showing the Alliance was classified as a 501(c)(3) organization, and a public charity under Section 509(a)(1) of the Internal Revenue Code. *See* 26 U.S.C. § 501(c)(3); 26 U.S.C. § 509(a)(1). In addition, OOR reviewed

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

the affidavit of John R. Phillips, President and Chief Operating Officer, attesting that the Alliance was the same private corporate entity that OOR held was not subject to the RTKL in *Styborski v. Oil Region Alliance,* OOR Dkt. No. AP 2010–0272, (Pa. OOR, filed Apr. 26, 2010).

Requester countered, submitting a verified position statement alleging the Venango County (County) Commissioners designated the Alliance to serve as its "tourism promotion agency." [2] As a result, the request should be viewed as having been served upon the County's tourism promotion agency, not the Alliance.

As in the prior case, OOR ruled the Alliance did not qualify as an agency, or "similar governmental entity," and it denied Requester's appeal. *See Hadley v. Oil Region Alliance,* OOR Dkt. No. AP 2012–0184 (Pa. OOR, filed March 26, 2012). Requester appealed OOR's final determination to the trial court.

The trial court rendered findings of fact and conclusions of law, holding the Alliance did not qualify as an agency under the RTKL. The trial court concluded that OOR did not commit an error of law or violate any constitutional rights, and that its determination was supported by substantial evidence. The trial court analyzed case law, and it reasoned the Alliance did not perform an essential government function and was not sufficiently connected to or controlled by government to qualify as an agency under the RTKL.

Requester appealed to this Court.[3]

## II. Discussion

Requester challenges whether the trial court applied the proper standard and scope of review when it deferred to OOR. Requester also asserts the trial court erred in failing to conclude the records of the Alliance are accessible despite its status as a private entity pursuant to our Supreme Court's decision in *SWB Yankees LLC v. Wintermantel,* 615 Pa. 640, 45 A.3d 1029 (2012). Requester contends this Court can direct disclosure as if the County received his request.

The primary issue before the Court is whether, as a matter of law, the Alliance qualifies as a "local agency," as that term is defined in the RTKL.

### A. Proper Standard of Review

■ Requester first argues the trial court erred by applying a deferential standard of review to OOR.[4] The Alliance responds the trial court applied the proper standard of review pursuant to *Bowling v. Office of Open Records,* 990 A.2d 813 (Pa. Cmwlth.2010) (*en banc*), *aff'd,* —— Pa. ——, 75 A.3d 453 (2013).

In its opinion, the trial court cited a deferential standard of review. The trial court began its analysis by stating, "[T]he standard of review as it currently exists

---

2. A "recognized tourism promotion agency" is defined in Section 1770.6 of the County Code as "the nonprofit corporation, organization, association or agency which is engaged in planning and promoting programs designed to stimulate and increase the volume of tourist, visitor and vacation business within counties" it serves. Act of August 9, 1955, P.L. 323, as *amended,* added by Section 4 of the Act of December 22, 2000, 16 P.S. § 1770.6.

3. Our review of the trial court's decision is "limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision." *Allegheny Cnty. Dep't of Admin. Servs. v. Parsons,* 61 A.3d 336, 342 (Pa. Cmwlth.2013) (*en banc*). Review of legal issues is plenary. *Id.*

4. Requester notes this error is harmless as agency status is determined as a matter of law.

over an appeal from an agency requires us to affirm the administrative adjudication unless we find an error of law was committed, that constitutional rights were violated, or that any findings of fact were not supported by substantial evidence of record." Tr. Ct., Slip Op., 11/21/12, at 4.

At the time the trial court issued its decision, our Supreme Court had not resolved the appeal in *Bowling*. This Court's *en banc* decision in *Bowling*, which pertained to a Commonwealth agency, held the first level of court review under Chapter 13 of the RTKL was *de novo* and independent. In our decision, this Court rejected the traditional deferential review. Thus, the trial court erred to the extent it applied a deferential standard of review.

■ Although it erred in stating it was "constrained to affirm the OOR determination," Tr. Ct., Slip Op., at 5, the trial court made its own findings and conclusions and explained its rationale as required by Chapter 13 of the RTKL. Section 1302(a) of the RTKL, 65 P.S. § 67.1302(a). Further, the trial court fully analyzed whether the Alliance qualified as either a Commonwealth or local agency. Notably, the trial court found "the [Alliance] is not an agency as defined in [Section 102 of the RTKL,] 65 P.S. § 67.102. Moreover, we do not see the type of relationship existing between [the Alliance] and local governmental authority here in Venango County. . . ." Tr. Ct., Slip Op., at 13.

In conclusion, the trial court reasoned, "Where, as here, there is no government control, no delegated authority, and no agency relationship between a governmental entity and the [Alliance], the RTKL and its disclosure requirements do not apply." *Id.* at 14. Ultimately, the trial court held "the decision of the OOR was supported by substantial evidence in the record and in accord with our location of available precedent. . . ." *Id.* at 15. Thus,

despite identifying an incorrect standard of review, the trial court, in part, chose to defer to OOR's fact-finding. Our Supreme Court's decision in *Bowling* permits such deference. *See Bowling* (affirming *de novo* review; allowing Chapter 13 courts to defer to fact-finding at the appeals officer level). Further, the trial court made its own findings with regard to the Alliance's finances and funding streams to determine the degree of government control. Consequently, the trial court's error in stating an improper standard of review was harmless.

### B. Agency Status

Requester contends the Alliance is the County's tourism protection agency, and the County's lead economic development agency. Because it is an "industrial development agency," Requester insists the Alliance qualifies as a local agency subject to the RTKL. Appellant's Br. at 13. That the Alliance is a registered private nonprofit charity does not alter its agency status, Requester asserts. Requester also argues the trial court erred in construing the definition of "local agency" so narrowly when the statutory definition includes "any . . . agency." Section 102 of the RTK L, 65 P.S. § 67.102.

The Alliance counters that it is not a local agency because it is a private corporation that does not perform an essential government function. The Alliance emphasizes it is a private nonprofit entity governed by its independent Board that is not controlled by government.

Requester does not argue the Alliance is a Commonwealth agency. Therefore, the only issue before this Court is whether the Alliance qualifies as a "local agency."

"Local Agency" is defined in the RTKL in pertinent part as: "*Any* local, intergovernmental, regional or municipal *agency,*

authority, council, board, commission or *similar governmental entity.*" Section 102 of the RTKL, 65 P.S. § 67.102 (emphasis added).

### 1. Any Agency

■ Requester construes the definition of local agency as encompassing "any ... agency," meaning any agency defined by any law.

This Court construes the definition less broadly, recognizing the importance of the descriptive modifiers. *See Phila. Indus. Devel. Corp. v. Ali (PIDC v. Ali),* 2011 WL 10843527 (Pa.Cmwlth., No. 528 C.D.2010, filed Apr. 18, 2011) (unreported, filed pursuant to former 210 Pa.Code § 67.29(b), now at 210 Pa.Code § 69.256(b)), Slip Op., at 7 (citing *Indep. Oil & Gas Ass'n of Pa. v. Bd. of Assessment Appeals of Fayette Cnty.,* 572 Pa. 240, 246, 814 A.2d 180, 184 (2002) (*IOGA* )).

As used in the statute, the word "any" applies to the particular descriptive terms which follow, "local, intergovernmental, regional, or municipal." Section 102 of the RTKL, 65 P.S. § 67.102 (definition of local agency).

Under Requester's proffered construction ("any ... agency") the particular descriptive terms would be mere surplusage. Such an interpretation does not comport with the rules of statutory construction. 1 Pa.C.S. § 1921(c); *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004) (no provision should be "reduced to mere surplusage"). Instead, the word "agency" should be interpreted as limited to local, municipal, intergovernmental or regional type agencies. This construction is indicated from the particular words preceding the general word "agency." *IOGA;* 1 Pa. C.S. § 1903(b) ("general words shall be

construed to take their meanings and be restricted by preceding particular words."). For these reasons, we reject Requester's broad interpretation that anything referred to as an agency under any law qualifies as an agency under the RTKL.

### 2. Industrial Development Agency/Tourism Promotion Agency

■ Requester also relies on the Alliance's undisputed status an "industrial development agency" under Section 3(g) of the Industrial Development Authority Act (Act) [5] to confer agency status. Requester contends the appointment as this type of agency suffices to qualify the Alliance as an agency under the RTKL.

There is no record evidence establishing that an "industrial development agency" is a government entity. Moreover, contrary to Requester's assertions, the definition of industrial development agency in the Act does not characterize the functions of such agencies as "essential[ly] governmental" in nature. *See* Appellant's Br. at 13–14. The "governmental" terminology appears in the provision outlining the role ascribed to the Pennsylvania Industrial Development Authority (PIDA) created by the Act. Section 10.1 of the Act.[6] Requester appears to confuse the role of PIDA with that of nonprofit development agencies like the Alliance. Unlike the Alliance, an authority expressly created by statute, such as PIDA, is an agency under the RTKL.

By contrast, an "industrial development agency" means:

a nonprofit corporation or a foundation or association organized and existing under the laws of this Commonwealth, regardless of the particular name, to

---

**5.** Act of May 17, 1956, P.L. 1609, *as amended,* 73 P.S. § 303(g).

**6.** Added by Act of September 27, 1973, P.L. 262, *as amended,* 73 P.S. § 310.1.

whose members or shareholders no profit shall ensure and which shall have as a purpose the promotion, encouragement, construction, development and expansion of new or existing industrial development projects in a critical economic area.

Section 3(g) of the Act, 73 P.S. § 303(g). Assisting economic development and stimulating the local economy is not referred to in the definition as a government function. Indeed, it is a function that may be ascribed to any profitable private business that provides employment in a certain locality.

Requester also asserts the Alliance serves as the County's official "tourist promotion agency," for which it enjoys agency status. See Appellant's Br. at 14. However, Requester's conclusion is based on the use of the term "agency" without regard to the statutory definition. The Tourism Promotion Act defines a "County tourism promotion agency" to include a nonprofit corporation.[7] Designation as a "tourist promotion agency" authorizes the Alliance to apply for and receive grants from the Commonwealth as an agent designated by the County; it does not ascribe certain functions.

While stimulating a local economy is a laudable purpose, it is not a substantially governmental one. That these acts refer to the Alliance as an "agency" makes the Alliance no more governmental than a travel agency or a modeling agency. We reject the suggestion that the name alone is conclusive. Further, in an unpublished but persuasive decision, we held industrial development corporations, having a purpose of economic development on behalf of

a distinct locality, are not subject to the RTKL. *PIDC v. Ali.* Likewise, here the Alliance's role as an industrial development agency or tourism promotion agency does not confer "local agency" status on it.

### 3. Similar Governmental Entity

#### a. Generally

█ Lastly, we analyze whether the Alliance meets the definition of local agency as a "similar governmental entity."

Similar to Requester here, in *PIDC v. Ali,* Ali sought employee names and salaries. In addition, Ali also asserted PIDC should be subject to the RTKL as a "similar governmental entity" because it was the "life support system of a public entity . . . [and was] so closely entwined with the operation of a public entity. . . ." *PIDC v. Ali,* Slip Op. at 6. This Court rejected that argument, focusing instead on the term "similar governmental entity."

In assessing status as a "similar governmental entity," this Court evaluated the authority government exercises over the alleged agency, including its employees. *PIDC v. Ali.* This Court noted the government agency with which PIDC contracted, the Philadelphia Authority for Industrial Development or "PAID," did not hire or control the corporation's employees, establish their salaries or exercise any management over their performance. That PIDC performed government duties on behalf of PAID pursuant to a contract did not render PIDC a government entity. Rather, the government functions performed by contractual delegation implicated Section 506(d) of the RTKL, 65 P.S. § 67.506(d) (access to third-party records).

7. Section 2 of the Act of July 4, 2008, P.L. 621, *as amended,* 73 P.S. § 410.2. Requester did not analyze the definition of "tourism protection agency," or the function of such an agency in his brief. Requester notes only that

the Alliance receives benefits by virtue of its designation. Appellant's Br. at 14. In addition, we note there is no resolution formalizing a designation by the County in the Reproduced Record.

This Court held PIDC did not qualify as a "similar governmental entity," reviewing its functions and the degree of control by government. Significantly, unlike authorities created by statute, industrial development corporations do not possess statutory authority to accomplish their goals.

In *PIDC v. Ali*, this Court reasoned the development corporation was not similar to the other agencies listed in the local agency definition. We noted the other entities were creatures of statute, or were created by political subdivisions as part of those subdivisions, and were able to exercise the authority of those subdivisions. Because PIDC did not share these traits, it was not a "similar governmental entity."

Guided by the decision in *PIDC v. Ali*, and in other cases, we consider whether the Alliance qualifies as a "similar governmental entity." *See, e.g., Scott v. Delaware Valley Reg'l Planning Comm'n*, 56 A.3d 40 (Pa.Cmwlth.2012) (determining Commission did not qualify as an agency based on prior case law construing its function). Among other things, we examine the degree of government control, through Board representation, the nature of the Alliance's functions, and financial control.

### b. Government Control of Operations

The material facts here are not disputed. The Alliance is a private nonprofit 501(c)(3) corporation registered to do business in Pennsylvania.[8] It is governed by a 25–member Board comprised of Venango County residents, including industrialists, businessmen, bankers, and a few representatives of government agencies. Private sector representatives have a clear majority at 21 members.

In concluding the Alliance is not an agency because there is no evidence of government control over its operations, the trial court applied the same analysis this Court performed in *PIDC v. Ali*. The trial court properly reviewed a number of factors, including organizational structure, purposes, powers, duties and fiscal affairs, as well as performance of a government function, to assess whether the Alliance qualified as a similar governmental entity.

Further, evidence of federal,[9] state and local government cooperation with an entity is not sufficient to establish control by a government agency. We agree with the trial court that the relevant consideration is control by government, not cooperation with government. The trial court found there was no evidence of control by the government because most of the Alliance's Board members are representatives from the private sector.

### c. Governmental Function

The trial court cited a number of cases that pre-dated the current RTKL, using the term "essential government function" as the test. We recognize, however, that under the current RTKL, an entity does not need to perform an "essential government function" in order to qualify as an

---

**8.** The Alliance is comprised of five different organizations: Venango County Economic Development Corp.; the Oil Heritage Region, Inc.; the Oil City Community Development Corp.; the Oil Heritage Region Tourist Promotion Agency; and, the Oil Heritage Region, Inc. (responsible under federal law to manage the Oil Region National Heritage Area).

**9.** Requester also asserted the Alliance's role in administering the Oil Region National Heritage Area is set by federal law, and cited a statutory provision, 16 U.S.C. § 461, as authority. Appellant's Br. at 15. We reviewed the cited provision, but the Alliance's governmental role is not apparent, and Requester did not further explain the relevance of this citation in his brief. Because Requester did not adequately develop this issue, the argument is waived. *See* Pa. R.A.P. 2119.

agency. The word "essential," which appeared in the definition of "Agency" under the former RTKL,[10] does not appear in the current "local agency" definition. Thus, decisions requiring performance of an "essential government function" no longer apply. However, prior case law retains its value to the extent it sets parameters on the term "governmental."

■■■ The function an entity performs weighs heavily in a local agency assessment. The function must be governmental, but it need not be not essential. To qualify as governmental, the function must be a substantial facet of a government activity. *SWB Yankees*.

Here, economic development and community stewardship are the Alliance's functions. The trial court determined the primary focus of the Alliance is local, based in Venango and Crawford counties. In contrast to the entity in *SWB Yankees,* the Alliance's functions do not fulfill a core purpose of a government agency. The trial court deemed the Alliance's functions more ancillary.

### d. Financial Control

Importantly, the trial court evaluated Requester's claims that receipt of public funds transformed the Alliance into a government entity. The trial court noted the Alliance had $2.8 million overall in operating revenue for 2011. *See* Tr. Ct., Slip. Op., at 14; *see also* Certified Record, Item No. 6, "Program of Work 2011" at 23 (Alliance's Budget). The Alliance receives significant private contributions annually,

which, paired with sales of property, totaled approximately $860,000. *Id.* The Alliance's annual membership dues account for almost $160,000. *Id.* Compared with the approximately $180,000 generated through the 3% hotel tax paid to the Alliance, the government financing of the Alliance is "proportionally small." *Id.* The trial court reasoned that receipt of such a small amount of government funds is not tantamount to government control. Otherwise, no private businesses would apply for grants or accept any financial support from a government entity. The trial court also found the financial assistance provided did not equate to any local government delegation of authority, and the public funds received were "*de minimus* [sic]." Tr. Ct., Slip. Op., at 14.

■■■ Case law supports the trial court's conclusions in this regard. *See, e.g., Mooney v. Bd. of Trs. of Temple Univ.,* 448 Pa. 424, 430, 292 A.2d 395, 399 (1972) (under prior RTKL, receipt of funds "no more transforms Temple into a state 'agency' than the receipt of federal funds can make Temple an agency of the federal government."); *Valentine v. Com.,* 973 A.2d 1101 (Pa.Cmwlth.2009). Similarly, tax exempt status does not convert a nonprofit entity into an agency. *Id.*

As the trial court's findings are supported by the undisputed facts, we uphold its conclusion that the Alliance is not an agency under the RTKL. Consequently, the Alliance is not directly subject to man-

---

10. Formerly Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1–66.9 (repealed by Section 3102(2)(ii) of the RTKL, 65 P.S. § 67.3102(2)(ii)) (Prior RTKL). "Agency" was defined as:

> [a]ny department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commis-

sion, or any State or municipal authority *or similar organization created by or pursuant to a statute which* declares in substance that such organization performs or *has its purpose the performance of an essential governmental function.*

Section 1(1) of the Prior RTKL, 65 P.S. § 66.1(1) (emphasis added).

datory disclosure obligations under the RTKL.

## C. Section 506(d) of the RTKL and Third–Party Records

■ Requester argues the Alliance's employee information should be accessible based on its relationship with the County, and on its designation as a tourist and economic development agency. Requester contends that because the Alliance performs a governmental function, it is immaterial that there is no contract between it and a government agency.

The Alliance counters that *SWB Yankees* and Section 506(d) of the RTKL do not apply because it has no contract with the County, and it does not perform any governmental functions. The Alliance also argues it did not act as an agent of any government agency.

Requester cites *SWB Yankees* for the broad proposition that "documents in the possession of a private entity are subject to the RTKL whenever that entity performs any governmental function." Appellant's Br. at 15. He then focuses his argument on whether the Alliance performs a governmental function, or is so intertwined with government that its records are accessible through the County. However, *SWB Yankees* requires more than performance of a governmental function. The case also requires a contractual relationship, conspicuously absent here.

*SWB Yankees* involved a request made to an authority whose agency status was not disputed on appeal. Responsive records were in possession of a third-party contractor that performed concessionaire services pursuant to its contract with the authority. As a result, at each level of review, the courts' analyses pertained to accessing records of a third-party contractor through Section 506(d) of the RTKL.

Section 506(d)(1) provides:

A public record that is not in the possession of an agency but is in possession of *a party with whom the agency has contracted* to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1)(emphasis added).

Requester represents that the County delegated certain economic development functions to the Alliance, including tourism and industrial recruitment. However, Requester points to no contractual relationship.

Section 506(d) does not offer a means of accessing the records here. This is because the Alliance does not contract with any government agency, to perform a governmental function. This Court requires a contractual relationship between a third party and an agency to access third-party records. See *Honaman v. Lower Merion Twp.*, 13 A.3d 1014 (Pa.Cmwlth.2011). Therefore, the trial court properly held the Alliance's information was not accessible through Section 506(d).[11]

## III. Conclusion

For the foregoing reasons, we agree with the trial court that the Alliance is not a local agency under the RTKL. As the trial court explained, there was no evidence of control by government over the

11. Further, Requester did not direct his request to an agency subject to the RTKL, such as the County, which is a prerequisite for any RTKL request. *See, e.g., Bagwell v. Dep't of Educ.*, 76 A.3d 81 (Pa.Cmwlth.2013) (*en banc*) (request falls within OOR's jurisdiction when directed to an agency, even when the subject of the request is another entity that falls outside OOR's jurisdiction).

Alliance's operations or management. The Alliance's Board is independent and contains few government representatives. The funding the Alliance receives from government sources does not convert it into a governmental entity, and is but a small portion of its overall financial resources. Further, as Requester points to no contract between the County and the Alliance, Section 506(d) of the RTKL is not implicated. Accordingly, we affirm.

## *ORDER*

**AND NOW**, this 3rd day of January 2014, the order of the Venango County Court of Common Pleas is **AFFIRMED.**