# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Southern Alleghenies Planning and Development Commission | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 827 C.D. 2023 |
| | : | |
| Richard Latker and Hollidaysburg Community Watchdog, | : | |
| | : | |
| Appellants | : | |
| | : | |
| Alleghenies Broadband, Inc. | : | |
| | : | |
| v. | : | No. 828 C.D. 2023 |
| | : | |
| Richard Latker, Hollidaysburg Community Watchdog, and Southern Alleghenies Planning and Development Commission | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: Richard Latker and Hollidaysburg Community Watchdog | : | |
| | : | |
| Richard Latker and Hollidaysburg Community Watchdog, | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 829 C.D. 2023 |
| | : | Argued: May 7, 2024 |
| Southern Alleghenies Planning and Development Commission | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: June 27, 2024**

Richard Latker and Hollidaysburg Community Watchdog (Requesters) appeal from the Order of the Court of Common Pleas of Blair County (common pleas) reversing the Office of Open Records' (OOR) Final Determination that the Southern Alleghenies Planning and Development Commission (Commission) satisfied the Right-to-Know Law's (RTKL)[1] definition of a local agency under Section 102 of the RTKL, 65 P.S. § 67.102,[2] and was thus subject to the RTKL, and by extension, the jurisdiction of OOR. After careful review, we vacate and remand.

## I. BACKGROUND

On November 8, 2021, Requesters submitted a RTKL request to the Commission seeking the following:

**A. Records requested, Category "A":**

1. Copies of all invoices submitted by Alleghenies Broadband[,] Inc[.] (ABI) to [the Commission] for direct payment, reimbursement and/ or remuneration for professional services.

2. Any applications to the federal Internal Revenue Service (IRS) signed by [the Commission] personnel pertaining to the tax-exempt status of ABI.

3. Any and all communication and /or commentary from the IRS with respect to ABI.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] The RTKL defines "local agency" as:

(1) Any political subdivision, intermediate unit, charter school, cyber charter school or public trade or vocational school.

(2) Any local, intergovernmental, regional or municipal agency, authority, council, board, commission or similar governmental entity.

65 P.S. § 67.102.

4.  [Commission] Form 990 for 2020.

5.  All submissions in response to Phase 1 Regional Broadband [Request for Proposals (RFP)] issued by ABI, deadline for which was July 7, 2021.

**B.  Records requested, Category "B":**

1.  Any documentation, including resolutions of the Board of Directors, specifically addressing and/or outlining the relationship between []ABI[], a[n IRS] 501(c)(3) [organization], and [the Commission] and/or Southern Alleghenies Planning and Development Corporation.

2.  Complete minutes and audio recording, if any, of the [Commission] Personnel Committee meeting of October 7, 2021.

3.  Copies of all proposed personnel policies to be considered at the Board of Directors meeting scheduled for Nov[ember] 17, 2021.

4.  Copies of all [Commission] public notices published in calendar [year] 2021.

5.  Agenda and minutes for all publicly accessible meetings in calendar [year] 2021.

6.  Copies [Fiscal Year] 2021 Single Audit as prepared by Maher Duessel (PDF preferred).

(Supplemental Reproduced Record (Suppl. R.R.) at 11b-12b.)  The Commission granted the request in part but declined to disclose various records that it concluded were records of ABI and not of the Commission.  (*Id.* at 13b-14b.)

Requesters appealed to OOR, and OOR granted ABI's request to participate. (*Id.* at 9b-10b; OOR Final Determination at 3-4.[3])  The sole request at issue before OOR was Category A, Item 5 (Item 5).  (OOR Final Determination at 3.)  In its

---

[3] OOR's Final Determination can be found at PDF page 20 of the trial court record (unpaginated).

position statement, the Commission argued, for the first time, that it was not a local agency, and thus not subject to OOR's jurisdiction. (OOR Final Determination at 4.) Requesters maintained that both the Commission and ABI were local agencies. ABI took the position that neither it nor the Commission were local agencies, and that the records sought in Item 5 were property of ABI.

Describing the local agency status issue as jurisdictional, OOR began by analyzing whether the Commission was a local agency in the first instance. (OOR Final Determination at 6.) It turned to the factors discussed in *In re Right to Know Law Request Served on Venango County's Tourism Promotion Agency*, 83 A.3d 1101, 1107 (Pa. Cmwlth. 2014) (*Venango County* factors), and reiterated in *Pysher v. Clinton Township Volunteer Fire Company*, 209 A.3d 1116 (Pa. Cmwlth. 2019) (*Pysher I*), determining that the Commission satisfied Section 102's definition of local agency because it was a "similar governmental entity." (OOR Final Determination at 9.)

It first focused on the fact that the Commission, under its bylaws, is meant to "foster a relationship between the citizens of the [p]articipant [c]ounties and the government." (*Id.* at 8.) It also looked to the makeup of the Commission's board, noting that it "consists of 19 individuals, 12 of whom are county commissioners (2 from each of the [member] [c]ounties) and the remaining 7 who are drawn from the private sector." (*Id.*) The fact that a majority of the board "consists of county commissioners who are elected by the public to serve the governmental agencies" persuaded OOR that the governmental control factor "weigh[ed] in favor of finding that the Commission is a local agency." (*Id.*)

In concluding that the Commission serves a government function, the second factor, OOR pointed to the purpose of the Commission, to "promote inter-

4

governmental and intra-governmental cooperation within the [r]egion" and to "serve as forum for discussion of governmental problems of mutual interest and concern to the [p]articipant [c]ounties and their [c]itizenry." (*Id.*) It also explained that the Commission's goal is economic development, and it was that goal that led the Commission to form ABI to address the issue of broadband infrastructure in the Southern Alleghenies region. That fact "suggest[ed] that the Commission has a substantial governmental interest." (*Id.* at 9.)

With respect to financial control, OOR was persuaded that the federal grant funds the Commission had received from the federal Economic Development Administration satisfied that factor. (*Id.* at 9.) Moreover, OOR found that the Commission holds itself out as a local agency subject to the RTKL, which, in its view, "support[s] a finding that the Commission is a local agency[.]" (*Id.*)

Additionally, OOR concluded that the Commission constructively possesses the records of ABI. OOR relied on cases like *West Chester University of Pennsylvania v. Schackner*, 124 A.3d 382 (Pa. Cmwlth. 2015) (*West Chester*), in which this Court held that a private foundation operated by a public university is the public university's alter ego. (OOR Final Determination at 11-12.) OOR also concluded that ABI "is performing a governmental function on behalf of the Commission." (*Id.* at 12.) OOR reasoned "ABI[] was created in furtherance of the Commission's purpose to extend broadband service," and, therefore, "ABI constitutes an alter ego of the Commission . . . ." (*Id.* at 13.) In reaching this conclusion, OOR looked to the affidavit of Brandon Carson, ABI's executive director, which reveals that Carson is a full-time employee of the Commission, that his services to ABI are performed pursuant to a contract (professional services agreement) executed between ABI and the Commission, and that the Commission's

5

executive director was the incorporator of ABI. (*Id.* at 10 (citing Declaration in Support of Direct-Interest Party [ABI] (ABI Decl.) ¶ 4).)[4]

Finally, OOR determined "the Commission is permitted to exempt the proposals [identified as responsive to Item 5] that have not been awarded a contract but must provide the one proposal that is actually 'under construction' . . . ." pursuant to Section 708(b)(26) of the RTKL, 65 P.S. § 67.708(b)(26).[5] (*Id.* at 15.) All parties subsequently appealed to common pleas.

On appeal, Requesters requested discovery, an evidentiary hearing, and supplementation of the record; ABI filed a motion in limine seeking to prevent discovery, depositions, and supplementation of the record. (Common pleas op. at 2.)[6] Common pleas granted the motion in limine, thus **denying** Requesters' request for supplementation of the record. (*Id.*) Common pleas agreed with OOR that the question whether an entity is a local agency as defined by the RTKL is a jurisdictional question because OOR's statutorily circumscribed powers are limited to reviewing decisions of Commonwealth and local agencies. (*Id.* at 4.) Common pleas first rejected the notion that the Commission could be considered a political

---

[4] The ABI Declaration can be found at page 132b of the Supplemental Reproduced Record.

[5] The RTKL exempts from disclosure

> proposal[s] pertaining to agency procurement or disposal of supplies, services or construction prior to the award of the contract or prior to the opening and rejection of all bids; financial information of a bidder or offeror requested in an invitation for bid or request for proposals to demonstrate the bidder's or offeror's economic capability; or the identity of members, notes and other records of agency proposal evaluation committees established under [Section 513 of the Commonwealth Procurement Code,] 62 Pa.C.S. § 513 (relating to competitive sealed proposals).

65 P.S. § 67.708(b)(26).

[6] Common pleas held oral argument on these issues on August 31, 2022. (Transcript of Testimony from Oral Argument, trial court record at PDF 537.)

6

subdivision because it is a "private[,] nonprofit corporation . . . [,] was not created by a political subdivision[,] nor is it a division of a political subdivision or a political subdivision itself." (*Id.*) It observed that the Commission's directors come from several counties, and the Commission has no power of a governmental body, and further, no individual county can disband the Commission. (*Id.* at 4-5.) Accordingly, common pleas determined that the Commission could not be considered a local agency or similar governmental unit. (*Id.* at 5.)

Common pleas next considered, looking to the *Venango County* factors, whether the Commission could be considered a "similar governmental entity." (*Id.*) In analyzing the degree of governmental control factor, common pleas reiterated that no single county controls the Commission, and the commissioners have a fiduciary duty under the Nonprofit Corporation Law of 1988 (NCL).[7] (*Id.*) With respect to the factor regarding the nature of the Commission's functions, the court noted that the question is one of governmental **function**, not governmental **interest**. (*Id.* at 6.) It noted that "[w]hile stimulating a local economy is a laudable purpose, it is not a substantially governmental one." (*Id.* (quoting *Venango Cnty.*, 83 A.3d at 1107).) It reasoned that here, too, the Commission's purpose of furthering broadband is laudable but not a governmental function. (*Id.*) Regarding financial control, common pleas explained that "[t]he record is bare of any indication of attempted control by the federal government[,]" observing that "receipt of government funds d[oes] not transform an entity into a state agency." (*Id.*) Requesters timely appealed to this Court.[8]

_____

[7] 15 Pa.C.S. §§ 5101-6146.
[8] Courts of common pleas are the ultimate factfinders in RTKL disputes regarding local agencies. Section 1302(a) of the RTKL, 65 P.S. § 67.1302(a). This Court's review is limited to determining whether the common pleas court made a legal error, abused its discretion, or rendered **(Footnote continued on next page…)**

7

## II. DISCUSSION

### A. *Local Agency*

We first consider whether the Commission is a local agency.

#### 1. Parties' Arguments

Requesters argue the Commission is a "similar governmental entity" under the RTKL's definition of local agency, 65 P.S. § 67.102. Requesters assert that the Commission has historically operated and held itself out as a government agency as evidenced by the composition of the board of directors and its function of directing federal and state funds to address regional goals. Requesters explain that the Commission was a "prime sponsor" under the federal legislation, the goal of which was "to place administrative responsibility for [the] man-power programs on the shoulders of local government officials." (Requesters' Brief (Br.) at 15.) In Requesters' view, the fact that the Commission has an open records officer and abides by the RTKL and the Sunshine Act[9] supports the conclusion that it is a similar government entity.

With respect to the *Venango County* factors, Requesters submit that this Court has only found economic development entities to lack sufficient government control to constitute similar government entities where the private sector comprised the majority of their boards of directors, which is not the case here. Next, with respect to the function of the Commission, Requesters argue that it is not just the purpose, but the means by which the Commission stimulates the economy. Because it "obtains state and federal grant money and then channels those funds at the behest

---

factual findings unsupported by substantial evidence. *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019).

[9] 65 Pa.C.S. §§ 701-716.

of the elected officials who sit on the board and direct the Commission[,]" the Commission, in Requesters' view, performs a government function. (*Id.* at 18.) Regarding the Commission's efforts related to broadband in particular, Requesters posit that "[c]reating infrastructure and entities to administer the creation and maintenance of utilities has been a common government function since the mid[-]20th Century." (*Id.*) Requesters assert that the Commission also satisfies the financial control factor because it uses government funds at the direction of government officials. Finally, Requesters would have this Court reject common pleas' reasoning that receipt of government funds is not enough, noting that the Commission "is not simply the recipient of government funds," but rather "[i]t applies for and receives considerable sums of government money, and then distributes that money to projects at the direction of local officials." (*Id.* at 19-20.)

The Commission argues that it is not a similar governmental entity given its status as a private, nonprofit corporation, and that provision of broadband is not a government function. The Commission likens itself to the entities at issue in *Venango County* and *Philadelphia Industrial Corporation v. Ali* (Pa. Cmwlth., No. 528 C.D. 2010, filed Apr. 18, 2011),[10] explaining that it

> was not created by a political subdivision pursuant to a specific statutory power, is not a division of a political subdivision or a political subdivision itself; its board members are not appointed exclusively by the governing body of any one political subdivision; it does not require a delegation of authority from a political subdivision to promote economic development; and it cannot be disbanded by a political subdivision.

---

[10] Unreported panel decisions of this Court may be cited for their persuasive value. Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b); Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

(Commission's Br. at 14.) The Commission argues the fact that a majority of its board is county commissioners is of no moment because they have fiduciary duties, they do not engage in official county business at board meetings, and no one group of commissioners from a single county can control the Commission's activities. It further asserts that receipt of government funds alone does not convert it into a government agency. Finally, the Commission argues that its voluntary compliance with the RTKL and Sunshine Act does not render it a government agency, either.

ABI's arguments are virtually identical to those of the Commission. However, ABI also asserts that

> [a]pplying OOR's logic, the financial control factor of the RTKL's agency status test would create a situation where any time a non[]profit entity receives a grant from the state and/or federal governments, it may then be considered a federal or state agency . . . which could then transform back into [a] private entity for RTKL purposes when grants expire or are no[t] renewed.

(ABI's Br. at 28.)

### 2. Relevant Law

To be required to comply with the RTKL, an entity must be either a Commonwealth agency or a local agency. Section 102 of the RTKL defines local agency, in relevant part, as "[a]ny local, intergovernmental, regional or municipal agency, authority, council, board, commission or **similar governmental entity**." 65 P.S. § 67.102 (emphasis added). OOR and common pleas, as well as the parties, focus on whether the Commission qualifies as a "similar governmental entity."

*Venango County* addressed, *inter alia*, whether an entity dedicated to promotion of county tourism was a similar governmental agency under the RTKL. That entity was a private, nonprofit 501(c)(3) organization governed by a 25-

10

member board of directors, and members of the private sector constituted "a clear majority at 21 members." *Venango Cnty.*, 83 A.3d at 1108. With respect to its analysis of whether the entity was a similar governmental entity, and thus a local agency, the Court first analyzed **government control** of the entity's operations. It explained that "evidence of federal, state and local government **cooperation** with an entity is not sufficient to establish **control**[,]" as "the relevant consideration is control by government, not cooperation with government." *Id.* (emphasis added, footnote omitted). Subfactors within the governmental control factor include "structure, purposes, powers, duties[,] and fiscal affairs[.]" *Id.* It observed that "there was no evidence of control by the government because most of the [] [b]oard members are representatives from the private sector." *Id.*

Regarding governmental function, the second factor the Court considered, the Court explained that "[t]he function an entity performs weighs heavily in a local agency assessment. The function must be governmental, but it need not be [] essential. To qualify as governmental, the function must be a substantial facet of a government activity." *Id.* at 1109 (citation omitted). The Court reasoned that the entity's function of "economic development and community stewardship" did not "fulfill a core purpose of a government agency" but rather were "more ancillary." *Id.*

Finally, the Court analyzed the level of financial control the government had over the entity. In so doing, the Court examined the entity's operating revenue, breaking it down by amount received from private contributions, membership dues, and a local hotel tax. *Id.* It cited approvingly *Mooney v. Board of Trustees of Temple University*, 292 A.2d 395, 399 (Pa. 1972), in which the Supreme Court ruled that receipt of federal funds alone did not render a state university a state agency under

11

the RTKL's predecessor statute. *Venango County*, 83 A.3d at 1109. It also explained that tax exempt status does not render an entity a state agency, either, citing *Valentine v. Commonwealth*, 973 A.2d 1101 (Pa. Cmwlth. 2009). *Venango Cnty.*, 83 A.3d at 1109.

In *Pysher I*, this Court reaffirmed the vitality of the case-by-case *Venango County* multifactor test, which consists of factors this Court has considered to make this determination based on the type of entity involved and the arguments raised. In *Pysher I*, determining whether the entity at issue there—a volunteer fire company— was a local agency, the parties argued there was an inadequate factual record. We agreed we lacked sufficient facts to engage in *Venango County*'s three-pronged analysis, and so remanded to the common pleas court for further factual development. On remand, the common pleas court, after additional factfinding, employed the three-factor analysis and concluded the nonprofit fire company was a "similar governmental entity" and thus a local agency subject to the RTKL; we affirmed on the basis of the common pleas court's opinion. *Pysher v. Clinton Twp. Volunteer Fire Co.* (Pa. Cmwlth., No. 766 C.D. 2022, filed May 24, 2023) (*Pysher II*), affirming on the basis of *Pysher v. Clinton Twp. Volunteer Fire Co.* (Lycoming C.P., No. CV-20-01076, filed June 20, 2022).

The factors set forth in *Venango County* are helpful in determining whether a given entity can fairly be described as a similar governmental entity.[11] However, as we recently explained in a case involving a similar multifactor test in the RTKL context, we reiterate that "no one factor is dispositive" and the goal is to think about "whether we can classify a given [entity] as [a similar governmental entity]." *Pa. Off. of Governor v. Brelje*, 312 A.3d 928, 938 (Pa. Cmwlth. 2024). Indeed, the

---

[11] As the common pleas court noted in *Pysher II*, our prior decisions did not offer "explicit guidance on how to weigh these factors." *Pysher II*, trial court op. at 19.

factors are useful insofar as they provide clarity with respect to the "statutory text—our polestar in this inquiry—which sets as the standard whether" the entity is a similar governmental entity. *Id.* at 937. That means, after analyzing the factors based on the evidence presented, the court must determine whether the entity can fairly be described as "[o]f or relating to []a[] government."[12] Or, put another way, "[c]ourt[s] must consider the factors as a whole and assess whether [the entity] satisfies the statutory definition . . . ." *Pysher II*, trial court op. at 19.

### 3. Analysis

First, with respect to government control, common pleas focused on the fact that no single county controlled the Commission and that the board members all had fiduciary duties under the NCL. (Common pleas' op. at 5; Finding of Fact (FOF) ¶ 4.) However, its analysis did take into account the uncontroverted fact that 12 out of 19 of the Commission's board members **are elected county commissioners,** and that because 2 out of the 3 county commissioners of each county sit on the board, there is a quorum of each county's commissioners. (Commission's Bylaws ¶ 4.3.)[13] At least 10 county commissioners also would constitute a quorum for voting purposes under the Commission's bylaws. (*Id.* ¶ 4.4.) In addition, the "at large" members are nominated by the counties per the Bylaws. In the event one of the two appointed commissioners is absent, the third, non-appointed commissioner may serve as an alternate for their respective county. (*Id.* ¶ 4.3.) The non-appointed commissioner may also serve as an alternate for an absent at-large member. (*Id.*)

---

[12] Oxford English Dictionary, https://doi.org/10.1093/OED/4056052734 (last accessed June 26, 2024).

[13] The Commission's Bylaws can be found at page 260b of the Supplemental Reproduced Record.

Thus, it is entirely possible that the entire board at any given meeting could be entirely comprised of elected county commissioners. In our view, the fact that the majority of the board is **only** there by virtue of their status as elected officials weighs heavily in favor of a finding of governmental control.

This board differs from that of the entity in *Venango County*, where "[p]rivate sector representatives ha[d] a clear majority at 21 members." *Venango Cnty.*, 83 A.3d at 1108. One factor we found to cut against a finding of government control in *Pysher II* was "[t]he [municipalities'] lack of active control over [the entity's] activities." *Pysher II*, trial court op. at 23. Here, by contrast, the counties, through their commissioners, directly control the Commission. Further, we do not think it is relevant that no single county can disband the Commission, nor that the board members have fiduciary duties. What matters is that government actors, by virtue of their position, control the board. Put differently, the majority of the board is politically accountable to the people of the various counties; indeed, a quorum of each county's commissioners sits on the board. That structure certainly implicates the RTKL's core concern; the RTKL "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pa. State Police v. McGill*, 83 A.3d 476, 479 (Pa. Cmwlth. 2014) (en banc). The composition of the board strongly supports that the Commission is subject to government control.

Second, in analyzing government function, common pleas focused almost exclusively on the Commission's purpose as evinced by its bylaws, which speak to the organization's purpose, like the promotion of inter- and intra-governmental cooperation, serving as a forum to discuss problems, and enhancing economic

14

development. (Common pleas' Op. at 6.)[14] We agree with Requesters that these functions, which the counties have banded together to perform, are often performed by local governments on their own. Further:

> [U]nder the current RTKL, an entity does not need to perform an "**essential** government function" in order to qualify as an agency. The word "essential," which appeared in the definition of "Agency" under the former RTKL,[10] does not appear in the current "local agency" definition.
>
>> FN 10: *Formerly* Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.9[,] []repealed by Section 3102(2)(ii) of the RTKL, 65 P.S. § 67.3102(2)(ii)) . . . .

*Venango Cnty.*, 83 A.3d at 1108-09 (emphasis added). In his fact affidavit before OOR, the executive director of the Commission explained as follows:

> 10. In 2016 the [Commission's member counties] agreed to join in an effort to have a comprehensive plan prepared for the [] [r]egion and its constituent counties. The plan was completed. The consultant who completed the comprehensive plan identified inadequate broadband service as a weakness existing in all of the [member c]ounties, particularly in rural areas of the counties.
>
> 11. As a result of this finding, [the Commission] formed a broadband taskforce to study the issue and make recommendations regarding solutions to this problem.
>
> 12. After considerable study, and consideration of various options, the taskforce recommended the formation of a nonprofit corporation that would have as its primary purpose the enhancement of broadband service in rural areas within the [] [r]egion and in other areas of the state.
>
> 13. [The Commission] applied for and received a grant from the Economic Development Administration [] which could be used, in part, to develop broadband within the region and which in particular could

---

[14] We note that the Commission's Bylaws reference several additional purposes, including "the promotion of planning" more generally for the member counties. (Commission's Bylaws ¶ 1.2.)

15

be used to support the formation of ABI and assist ABI in getting started.

(Howsare Affidavit ¶¶ 10-13, Suppl. R.R. at 30b.)  This activity is quintessentially governmental work, as governments have taken responsibility for infrastructure development since time immemorial.  Accordingly, because the record supports a finding that the Commission performs a governmental function, we conclude that factor also weighs heavily in support of a finding that the Commission is a local agency.

However, with respect to financial control, common pleas made only one relevant finding, specifically that the Commission received a federal grant. (Common pleas' op. at 6; FOF ¶ 5.)  We agree with the Commission and ABI that receipt of federal grant funds without more information is insufficient to transform a private entity into a governmental one.  *See Mooney*, 292 A.2d at 399 ("The receipt by Temple of increased state financial aid no more transforms Temple into a state 'agency' than the receipt of federal funds can make Temple an agency of the federal government.").  The financial control finding in this case stands in stark relief to those in *Venango County* and *Pysher II*.  In both of those cases, the Court was able to identify the proportion of the entity's total budget attributable to public funds.  In *Venango County*, the Court knew the entity's "$2.8 million overall [] operating revenue" for the year in question.  *Venango County*, 83 A.3d at 1109.  Of that total revenue, $860,000 was attributable to private donations and sales of property, $160,000 to annual membership dues, and $180,000 to a local hotel tax.  Thus, we were able to meaningfully analyze the extent to which the government had financial control over the entity, and there, we agreed with the common pleas court that it was "*de minim*[*i*]*s*."  *Id.*  Similarly, in *Pysher II*, we knew the entity's annual budget, and the common pleas court was able to attribute 50% of that budget to the government.

16

*Pysher II*, trial court op. at 25. Here, no findings illustrate the financial status of the Commission, including the proportion of public and private funding sources to its overall budget, so we are not in a position to analyze the degree of financial control the government has over the Commission.

Looking together at the three factors of the *Venango County* test, we observe that the Commission is subject to governmental control and that it performs a government function. However, we are without sufficient factual findings or evidence of record to determine whether the Commission is subject to the financial control of the government. Because no one factor of this test is dispositive, and because courts should have sufficient information regarding each factor in order to determine whether a given entity satisfies the statutory definition, we remand for common pleas to take additional evidence regarding financial control. It should then make factual findings, as in *Venango County* and *Pysher II*, that illustrate the extent to which the Commission's entire budget is made up of government funds.

### B. Constructive Possession

If upon remand and further factual development common pleas concludes that the Commission is indeed a similar governmental entity, we would agree with Requesters that ABI is the Commission's alter ego, such that records of ABI are also records of the Commission.

#### 1. Parties' Arguments

Requesters defend OOR's position that ABI is an alter ego of the Commission, such that any records in ABI's hands are constructively possessed by the Commission. Requesters would have us analogize this situation to *West Chester*, in which this Court determined that records of a private nonprofit corporation could be

17

subject to the RTKL. Requesters assert that "[o]n numerous occasions, Pennsylvania courts have recognized the close relationship between government entities and their respective foundations." (Requesters' Br. at 21.) In Requesters' view, "ABI [is] performing a government function **on behalf** of the [Commission]." (*Id.*at 21 (emphasis added).) Requesters assert that the RTKL would be rendered "meaningless" if the Commission were allowed to "'frustrate the purpose of the RTKL by placing records into the hands of a third party to avoid disclosure.'" (*Id.* at 22 (quoting *Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932, 938-39 (Pa. Cmwlth. 2014), *aff'd* 124 A.3d 1214 (Pa. 2015)).)

The Commission acknowledges that it "did have physical possession and access to the records in question." (Commission's Br. at 19.) However, in its view, "[t]he records . . . were always records of ABI." (*Id.*) The Commission argues that *West Chester* is distinguishable because here, Commission officials are not *ex-officio* members of ABI's board, and ABI does not exist to advance the Commission's interests. The Commission asserts that it was error for OOR to determine that ABI was performing a government function on behalf of the Commission. It cites *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021), a recent Pennsylvania Supreme Court case about the doctrine of piercing the corporate veil, thus likening to the OOR's decision in this case to a court attributing the liabilities of one corporate form to that of another.

ABI asserts that under *UnitedHealthcare of Pennsylvania, Inc. v. Baron*, 171 A.3d 943, 959 (Pa. Cmwlth. 2017), there are only two limited situations under which records in the possession of a third party are accessible, and neither situation is satisfied here. ABI argues that because the RFP responses requested do not document a transaction of the Commission, and because there is no evidence that

18

ABI was acting on behalf of the Commission, the Commission does not have constructive possession of the RFP responses. That ABI was staffed by Commission personnel and received administrative support from the Commission are facts that ABI would have us reject as immaterial. Further, ABI distinguishes *West Chester* because that case involved a contract between the private foundation and the university, and the Court there reasoned that the foundation was performing a public function on the university's behalf. "The RFP responses at issue here are proposals submitted directly to ABI in response to ABI's RFP, and ABI has no statutory or contractual obligation to [the Commission] relative to ABI's preparation of the RFP and processing of the RFP [r]esponses." (ABI's Br. at 34.) Further, ABI urges us to reject the notion that it performs a governmental function at all, noting that the RFPs at issue here "relate to ABI's economic development and community stewardship functions, which are not governmental functions under the RTKL." (*Id.* at 34-35.)

2. Applicable Law

The RTKL requires agencies to make **records** accessible, Section 701 of the RTKL, 65 P.S. § 67.701, defining record as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business[,] or activity of the agency[,]" 65 P.S. § 67.102. "Constructive possession is the concept of accessing records 'of' an agency that are outside an agency's possession, but are within its legal custody or control." *Baron*, 171 A.3d at 958. We have described constructive possession as "focu[sing] on an agency's access to a record[,]" looking to Section 901 of the RTKL, which "mandates an agency

19

'determine whether [it] has possession, custody[,] or control of the identified record.'" *Eiseman*, 86 A.3d at 938 (quoting Section 901 of the RTKL, 65 P.S. § 67.901). We have emphasized that access to records via constructive possession under Section 901 is limited to those records that qualify as "records 'of' [the] agency" under Section 102. *Baron*, 171 A.3d at 958.

In *West Chester*, we addressed the question whether a public university's private foundation, responsible for fundraising and advocacy efforts on the part of the university, was an agency subject to the RTKL.

> As set out in the [f]oundation's by-laws . . . [] [university] officials serve as *ex-officio* [f]oundation officials by reason of their government position. . . . [B]ecause these [university] officials serve on the [f]oundation by reason of their status as [university] officials[,] and because the [f]oundation exists solely to advance the interests of [the university], any records received by these [university] officials are records of [the university] subject to the RTKL.

*West Chester*, 124 A.3d at 394-95 (footnotes omitted). Our analysis was concise:

> Foundations at the various institutions of the [Pennsylvania State System of Higher Education] in large part are alter egos of the member universities to carry out activities that those universities want to undertake; **otherwise, they would not exist**. As a result, the OOR did not err in determining that the requested documents are "public records" subject to disclosure under the RTKL.

*Id.* at 395 (emphasis added). Thus, we read *West Chester* to stand for the proposition that where an agency and a private entity are so closely connected that we can call the private entity an alter ego of the agency, the records of the private entity are, under Section 102's definition, also "of" the agency, and thus accessible via the RTKL.

Separate and distinct from the Section 901 constructive possession analysis is Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1), which provides:

20

> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

To invoke Section 506(d)(1), two elements must be satisfied "to reach records outside an agency's possession." *Eiseman*, 86 A.3d at 939. First, "the third party [must] perform[] a governmental function on behalf of the agency." *Id.* And second, "the information sought [must] directly relate[] to that function." *Id.* Thus, "non-exempt records of a third party may be subject to disclosure, provided the third party in possession has a contract with the agency to perform a governmental function, and the information directly relates to the performance of that function." *Id.* We have made clear that constructive possession and third-party records under Section 506(d)(1) are distinct pathways, and we have observed that, in the past, OOR has "conflat[ed] the two." *Baron*, 171 A.3d at 959.

### 3. Analysis

Common pleas did not make factual findings as to this issue given its disposition of the case on the initial agency status question. However, we are satisfied that the uncontroverted facts in the record supports OOR's conclusion that ABI is the Commission's alter ego, and thus, records of ABI are indeed records of the Commission. Therefore, if upon remand common pleas determines that the Commission is a similar governmental entity, we would agree with Requesters that records of ABI are records of the Commission, such that they would need to be disclosed.

21

First, the Commission funded ABI, and its incorporator was the Commission's executive director. (ABI Decl. ¶ 4.)[15] Brandon Carson, the executive director of ABI, is a full-time employee of the Commission; the Commission pays his salary, which he states is a "contribution by [the Commission] to ABI." (*Id.* ¶¶ 2-3.) The Commission was the recipient of the grant, intended in part to fund broadband infrastructure efforts, and which was used to "support the formation of ABI and assist ABI in getting started." (Howsare Aff. ¶ 13.) At the time of the request, ABI and the Commission were parties to a professional services agreement (PSA), due in part to the fact that ABI had no funds upon incorporation. (*Id.* ¶ 17.) The PSA's background provides that "[t]he Commission desires to provide support services to ABI" and that "ABI desires to retain the Commission to provide certain professional services and ancillary support services." (Suppl. R.R. at 72b.)

We believe the foregoing facts are suggestive of a situation in which ABI is essentially, at least at the time of the request, the alter ego of the Commission, and thus, any records "of" ABI are necessarily records "of" the Commission under the doctrine of constructive possession. Specifically, the fact that the Commission pays the salary of ABI's executive director, and the existence of the PSA, which effectively merges the two entities, strongly suggests ABI is the alter ego of the Commission. Further, it was the Commission that identified the need for increased broadband access and thus created ABI for that explicit purpose. Thus, ABI is "carry[ing] out activities that [the Commission] want[s] to undertake; otherwise, [ABI] would not exist."[16] *West Chester*, 124 A.3d at 395. Just like the university in

---

[15] The ABI Declaration can be found at page 132b of the Supplemental Reproduced Record.

[16] We note that Section 506(d)(1) does not apply here. There is no contract of record memorializing ABI's agreement to "perform a governmental function on behalf of" the **(Footnote continued on next page…)**

22

*West Chester* created and staffed its private foundation to carry out its goals, so too, the Commission created and staffed ABI to carry out its goal of expanding broadband access. Therefore, records of ABI are constructively (and, as acknowledged above, as to the Item 5 records, physically) possessed by the Commission.

## C. Exempt Proposals

If upon remand and further factual development common pleas concludes that the Commission is indeed a similar governmental entity, we would also agree with the Commission and ABI that OOR did not err in finding that all but one of the proposals in Item 5 were exempt from disclosure.

### 1. Arguments

Requesters assert that common pleas "erred in failing to hold it to be illegal for an agency to declare that records remain 'subject to action' or 'under construction[,]' and therefore exempt under [Section] 708(b)(26)[ of the RTKL, 65 P.S. § 67.708(b)(26),] indefinitely." (Concise Statement of Errors Complained of on Appeal ¶ 6.)[17]

ABI argues that if the requested records must be disclosed, all but one of the proposals at issue is exempt under Section 708(b)(26) of the RTKL, 65 P.S. § 67.708(b)(26). According to ABI, the RFP collected proposals for solving the problem of lack of broadband access, and ABI used those proposals to make recommendations to counties, municipalities, and school districts as to which

---

Commission. 65 P.S. § 67.506(d). Rather, the PSA of record relates to ABI's contract with the Commission whereby the Commission provides support to ABI in its infancy. OOR erred in not treating constructive possession and third-party records as distinct concepts.

[17] The Concise Statement can be found in a separate PDF of the trial court record.

23

proposals those government units should consider. This selection of offerors, it says, "does not equate to an award of a contract to remove Section 708(b)(26) protection of the RFP [r]esponses." (ABI Br. at 36.) The RFP contemplates more than one contract award, which is beyond ABI's control; the government unit ultimately chooses. Therefore, they assert that the 12 RFP responses that have not yet been awarded contracts are exempt from disclosure.

2. Analysis

Section 708(b)(26) of the RTKL provides that the following is exempt from disclosure:

> A proposal pertaining to agency procurement or disposal of supplies, services or construction **prior to the award of the contract** or prior to the opening and rejection of all bids; financial information of a bidder or offeror requested in an invitation for bid or request for proposals to demonstrate the bidder's or offeror's economic capability; or the identity of members, notes and other records of agency proposal evaluation committees established under 62 Pa.C.S. § 513 (relating to competitive sealed proposals).

65 P.S. § 67.708(b)(26) (emphasis added). In *UnitedHealthcare of Pennsylvania, Inc. v. Pennsylvania Department of Human Services*, 187 A.3d 1046, 1058 (Pa. Cmwlth. 2018), this Court held that it is execution of a contract—not selection of offerors on the part of an agency—that amounts to the "award of the contract" rendering Section 708(b)(26)'s exemption inapplicable.

Relevantly, the declaration of ABI's executive director provides

> In fulfillment of its mission, ABI issued [the RFP] on June 7, 2021 []. . . . Responses were due no later than 4:00 PM, July 7, 2021. The purpose of the RFP was to provide a pool of potential broadband expansion projects from which the counties, municipalities[,] and school districts in the six-county region could award funding using funds those entities had received from various sources, due largely to the pandemic. ABI's function is to prepare the RFP, review and evaluate the proposals received, and make recommendations to

24

counties, municipalities, and school districts. Upon approval of funding by a respective county, municipality or school district, ABI will then manage the projects going forward, for which it will be paid from the funds awarded. The proposals concerning fixed wireless, a total of six, have been recommended for funding by the ABI board. Of those six, three have been the subject of action, by Bedford and Huntingdon counties, and of those [] is under construction, while two are still subject to negotiations between the respective counties and those awarded the funding. There are a total of 13 response to the RFP. . . .

(Suppl. R.R. at 134b-135b.) We discern no error in OOR's determination that, based on the foregoing, there are still proposals issued pursuant to the RFP for which contracts have not been awarded. Because the plain language of Section 708(b)(26) exempts such proposals from disclosure, OOR did not err in ordering disclosure of only that proposal that resulted in an award.

## III.   CONCLUSION

For all the foregoing reasons, we vacate and remand with instructions that common pleas make such additional findings of fact to enable it to meaningfully address the financial control factor of the *Venango County* multifactor test. As our precedent teaches, common pleas should analyze the Commission's total budget to discern the extent to which the government exerts financial control over the Commission's budget. Given the arguments raised and briefed on appeal in this case, we are satisfied that should common pleas determine on remand that the Commission is a similar governmental entity, the records in Item 5 would need to be disclosed consistent with OOR's final determination.

_____
**RENÉE COHN JUBELIRER,** President Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Southern Alleghenies Planning and Development Commission | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 827 C.D. 2023 |
| | : | |
| Richard Latker and Hollidaysburg Community Watchdog, | : | |
| Appellants | : | |
| | : | |
| Alleghenies Broadband, Inc. | : | |
| | : | |
| v. | : | No. 828 C.D. 2023 |
| | : | |
| Richard Latker, Hollidaysburg Community Watchdog, and Southern Alleghenies Planning and Development Commission | : | |
| | : | |
| Appeal of: Richard Latker and Hollidaysburg Community Watchdog | : | |
| | : | |
| Richard Latker and Hollidaysburg Community Watchdog, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 829 C.D. 2023 |
| | : | |
| Southern Alleghenies Planning and Development Commission | : | |

## **O R D E R**

**NOW**, June 27, 2024, the Order of the Court of Common Pleas of Blair County in the above-captioned matter is **VACATED**, and this matter is **REMANDED** for further factual development consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge

2